E-filing

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

FILED
MAY 21 2008
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

MARION E. COIT on her behalf and on behalf of others similarly situated )
)
)
Plaintiffs, )
)
)
v. )
)
)
FIDELITY ASSURANCE ASSOCIATES LLC; FIDELITY OF GEORGETOWN, INC.; FINANCIAL SERVICES CONSULTANTS, INC.; MILLS, POTOCZAK & COMPANY; DULUDE & CARMOUCHE, INC.; RICHARD H. GUILFORD; BRAD C. THOMPSON; BRENDA TLUCZEK; WILLIAM J. CARMOUCHE; ESTUKO DULUDE; F. NEIL THOMPSON; ANTHONY FEUER and DOES 1 to 500, inclusive )
)
)
)
)
)
)
)
)
)
)
)
)
Defendants. )
)

CIVIL ACTION FILE NO. _____

C08-02585 JCS

FILE BY FAX

## NOTICE OF REMOVAL TO UNITED STATES DISTRICT COURT

TO:  THE HONORABLE JUDGES OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

Defendant Fidelity Assurance Associates, LLC ("Fidelity") by and through

undersigned counsel, pursuant to 28 U.S.C. § 1441, hereby give notice of

removal of this action to the United States District Court for the Northern District

of California. As grounds for this removal, Defendants state as follows:

GO 44 SEC. N
NOTICE OF ASSIGNMENT
TO MAGISTRATE JUDGE SENT

1.

Plaintiffs Marion Coit, on her behalf and on behalf of others similarly situated ("Plaintiffs"), filed an original Complaint against Defendants on or about April 3, 2008, in the Superior Court of the State of California in and for the County of Alameda, styled, *Marion E. Coit on her behalf and on behalf of others similarly situated v. Fidelity Assurance Associates, LLC; Fidelity of Georgetown, Inc.; Financial Services Consultants, Inc.; Mills, Potoczak & Company; Dulude & Carmouche, Inc.; Richard H. Guilford; Brad C. Thompson; Brenda Tluczek; William J. Carmouche; Estuko Dulude; F. Neil Thompson; Anthony Feuer, and Does 1 to 500, inclusive,* Case No. RG08379968 (the "Complaint").

2.

Fidelity accepted service of the Complaint on May 6, 2008.

3.

True and correct copies of all process, pleadings and orders on file with the Clerk of the Superior Court of the State of California in and for the County of Alameda, and served on Defendants are attached hereto as Exhibit "A" and incorporated herein by reference.

4.

This Notice of Removal of this case to the United States District Court is filed by Defendants within thirty (30) days after the receipt by Defendants, through

- 2 -

service of summons, of a copy of the initial pleading setting forth the claims for relief upon which this action is based. *See* 28 U.S.C. § 1446(b). (Further, this Notice of Removal is filed within one (1) year from commencement of the state court action and, therefore, is timely under 28 U.S.C. § 1446(b).)

## DIVERSITY JURISDICTION

### 5.

This case is removable under 28 U.S.C. § 1441 because this United States District Court has original jurisdiction of this case under 28 U.S.C. § 1332(d)(2). Section 1332(d)(2) provides, in pertinent part, as follows:

The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which—

(A)    any member of a class of plaintiffs is a citizen of a State different from any defendant;

### 6.

Upon information and belief, Plaintiff Marion Coit is an individual citizen of the State of California.

### 7.

Defendant Fidelity is a Delaware Corporation.

8.

The amount in controversy in this matter exceeds the sum or value sufficient to invoke the jurisdiction of this Court ($5,000,000) exclusive of interest and costs. The claims as pled, if proven to be true, which Defendant Fidelity vigorously denies, would result in damages exceeding $5,000,000.

9.

Although Plaintiffs do not plead a specific amount in damages, the following allegations, which are vigorously denied by Defendant, support Defendant's claim that the amount in controversy exceeds $5,000,000:

a.    Marion Coit invested $166,000 in the viatical settlement that is the subject of the instant litigation. Complaint at ¶¶ 145, 147.

b.    Plaintiffs allege that "the number of Plaintiffs within the class is so numerous that joinder is impracticable." Complaint at ¶ 156.

10.

If the class contained only thirty-five (35) members with investments in the amount of or exceeding the $166,000 investment made by Marion Coit, the amount in controversy would exceed $5,000,000.

11.

Thus, diversity principles bring this case properly before this Court.

12.

Written notice of the removal of this action has been given simultaneously herewith to Plaintiffs' counsel. A copy of this Notice of Removal will be filed promptly with the clerk of the Superior Court for the State of California in and for the County of Alameda. A copy of the Notice of Filing Notice of Removal is attached hereto as Exhibit "B" (without exhibit).

WHEREFORE, Defendant Fidelity prays that the Superior Court for the State of California in and for the County of Alameda proceed no further with Case No. RG08379968, and that said action be removed from the Superior Court for the State of California in and for the County of Alameda, to the United States District Court for the Northern District of California.

Respectfully submitted, this ___ day of May, 2008.

LOCKE LORD BISSELL & LIDDELL LLP

By: _____

Michael Hession (SB# 219103)
1170 Peachtree Street, Suite 1900
Atlanta, Georgia 30309
Tel: (404) 870-4600
Fax: (404) 872-5547

Attorneys for Fidelity Assurance Associates, LLC

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARION E. COIT on her behalf and on behalf of others similarly situated )<br>)<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>FIDELITY ASSURANCE ASSOCIATES )<br>LLC; FIDELITY OF GEORGETOWN, )<br>INC.; FINANCIAL SERVICES )<br>CONSULTANTS, INC.; MILLS, )<br>POTOCZAK & COMPANY; DULUDE & )<br>CARMOUCHE, INC.; RICHARD H. )<br>GUILFORD; BRAD C. THOMPSON; )<br>BRENDA TLUCZEK; WILLIAM J. )<br>CARMOUCHE; ESTUKO DULUDE; F. )<br>NEIL THOMPSON; ANTHONY FEUER )<br>and DOES 1 to 500, inclusive )<br>)<br>Defendants. )<br>_____ ) | CIVIL ACTION FILE<br>NO. _____ |

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the within and foregoing *NOTICE OF REMOVAL TO UNITED STATES DISTRICT COURT* by depositing a copy of same in the United States Mail, in an envelope with adequate postage affixed thereto, addressed to counsel of record as follows:

Robert S. Arnes
Morgan C. Smith
Jonathan E. Davis
The Arns Law Firm
515 Folsom Street, 3rd Floor
San Francisco, CA 94105

Kathryn a. Stebner
Stebner and Associates
870 Market Street, Suite 1212
San Fransisco, CA 94102

This \_\_\_\_\_ day of May, 2008.

Michael Hession

**POS-015**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*<br>Kathryn Stebner SBN 121088<br>Stebner and Associates<br>870 Market Street, Suite 1212<br>San Francisco, CA 94102<br><br>TELEPHONE NO.: 415-362-9800    FAX NO. *(Optional):* 415-362-9801<br>E-MAIL ADDRESS *(Optional):*<br>ATTORNEY FOR *(Name):* Plaintiffs Marion Coit on her behalf and on behalf of others<br>similarly situated | FOR COURT USE ONLY |
|---|---|

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA<br>STREET ADDRESS: 1225 Fallon Street<br>MAILING ADDRESS:<br>CITY AND ZIP CODE: Oakland, CA 94612<br>BRANCH NAME: | |
|---|---|

| PLAINTIFF/PETITIONER: Marion Coit<br><br>DEFENDANT/RESPONDENT: Fidelity Assurance Associates, LLC | |
|---|---|

| NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL | CASE NUMBER:<br>RG08379968 |
|---|---|

TO *(insert name of party being served):* MILLS, POTOCZAK & COMPANY

---

### NOTICE

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing: April 16, 2008

Kathryn Stebner
(TYPE OR PRINT NAME)                    ► _____
                                        (SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

### ACKNOWLEDGMENT OF RECEIPT

This acknowledges receipt of *(to be completed by sender before mailing):*
1. ☑ A copy of the summons and of the complaint.
2. ☑ Other *(specify):*
   ADR Information Package
   Notice of Hearing re Complex Determination / Case Management Conference

*(To be completed by recipient):*

Date this form is signed:

► _____
_____            _____
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,    (SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
ON WHOSE BEHALF THIS FORM IS SIGNED)              ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>POS-015 [Rev. January 1, 2005] | NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL | Page 1 of 1<br>Code of Civil Procedure,<br>§§ 415.30, 417.10<br>www.courtinfo.ca.gov |
|---|---|---|

American LegalNet, Inc.<br>www.USCourtForms.com




EXHIBIT
A

POS-015

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):<br>Kathryn Stebner SBN 121088<br>Stebner and Associates<br>870 Market Street, Suite 1212<br>San Francisco, CA 94102<br><br>TELEPHONE NO.: 415-362-9800    FAX NO. (Optional): 415-362-9801<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): Plaintiffs Marion Coit on her behalf and on behalf of others<br>similarly situated | FOR COURT USE ONLY |
|---|---|
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA<br>STREET ADDRESS: 1225 Fallon Street<br>MAILING ADDRESS:<br>CITY AND ZIP CODE: Oakland, CA 94612<br>BRANCH NAME: | |
| PLAINTIFF/PETITIONER: Marion Coit<br><br>DEFENDANT/RESPONDENT: Fidelity Assurance Associates, LLC | |
| NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL | CASE NUMBER:<br>RG08379968 |

TO (insert name of party being served): MILLS, POTOCZAK & COMPANY

## NOTICE

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing: April 16, 2008

Kathryn Stebner

(TYPE OR PRINT NAME)                    (SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

## ACKNOWLEDGMENT OF RECEIPT

This acknowledges receipt of (to be completed by sender before mailing):
1. ☑  A copy of the summons and of the complaint.
2. ☑  Other (specify):

ADR Information Package
Notice of Hearing re Complex Determination / Case Management Conference

(To be completed by recipient):

Date this form is signed:

(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,         (SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
ON WHOSE BEHALF THIS FORM IS SIGNED)                          ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

Form Adopted for Mandatory Use         NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL         Code of Civil Procedure,
Judicial Council of California                                                                §§ 415.30, 417.10
POS-015 (Rev. January 1, 2005)                                                               www.courtinfo.ca.gov
American LegalNet, Inc.
www.USCourtForms.com

**STEBNER AND ASSOCIATES**

870 Market Street, Ste. 1212

San Francisco, CA 94102



$0.419
US POSTAGE
FIRST-CLASS
082500804186
94102

THE ARNS LAW FIRM
Attn: Arns, Robert S
515 Folsom Street
3rd Floor
San Francisco, CA  94105

Fidelity Assurance Associates, LLC

**APR 1 1 RECD**

## Superior Court of California, County of Alameda
## Rene C. Davidson Alameda County Courthouse

| | |
|---|---|
| Marion E. Coit | No. RG08379968 |
| VS.    Plaintiff/Petitioner(s) | |
| Fidelity Assurance Associate | NOTICE OF HEARING |
| Defendant/Respondent(s) (Abbreviated Title) | |

To each party or to the attorney(s) of record for each party herein:

Notice is hereby given that the above-entitled action has been set for:

Complex Determination Hearing
Case Management Conference

You are hereby notified to appear at the following Court location on the date and time noted below:

Complex Determination Hearing:
DATE: 06/10/2008    TIME: 02:30 PM    DEPARTMENT: 22
LOCATION: Administration Building, Fourth Floor
1221 Oak Street, Oakland

Case Management Conference:
DATE: 07/07/2008    TIME: 02:30 PM    DEPARTMENT: 22
LOCATION: Administration Building, Fourth Floor
1221 Oak Street, Oakland

Pursuant to California Rules of Court, Rule 3.400 et seq. and Local Rule 4.2 (Unified Rules of the Superior Court, County of Alameda), the above-entitled matter is set for a Complex Litigation Determination Hearing and Initial Complex Case Management Conference.

Department 22 issues tentative rulings on DomainWeb (www.alameda.courts.ca.gov/domainweb). For parties lacking access to DomainWeb, the tentative ruling must be obtained from the clerk at (510) 267-6938. Please consult Appendix E to Local Rules 4 and 5 of the Unified Rules of the Superior Court, County of Alameda, concerning the tentative ruling procedures for Department22.

Counsel or party requesting complex litigation designation is ordered to serve a copy of this notice on all parties omitted from this notice or brought into the action after this notice was mailed.

All counsel of record and any unrepresented parties are ordered to attend this Initial Complex Case Management Conference unless otherwise notified by the Court.

Failure to appear, comply with local rules or provide a Case Management Conference statement may result in sanctions.

All motions in this matter to be heard prior to Complex Litigation Determination Hearing must be

scheduled for hearing in Department 22.

If the information contained in this notice requires change or clarification, please call the courtroom clerk for Department 22 at (510) 267-6938.

TELEPHONIC COURT APPEARANCES at Case Management Conferences may be available by contacting CourtCall, an independent vendor, at least 3 business days prior to the scheduled conference. Parties can make arrangements by calling (888) 882-6878, or faxing a service request form to (888) 883-2946. This service is subject to charges by the vendor.

Dated: 04/07/2008                                    Executive Officer / Clerk of the Superior Court

                          By                                                    
                                                                    Deputy Clerk

## CLERK'S CERTIFICATE OF MAILING

I certify that the following is true and correct: I am the clerk of the above-named court and not a party to this cause. I served this Notice by placing copies in envelopes addressed as shown hereon and then by sealing and placing them for collection, stamping or metering with prepaid postage, and mailing on the date stated below, in the United States mail at Alameda County, California, following standard court practices.

          Executed on 04/07/2008.

                          By                                                    
                                                                    Deputy Clerk

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Marion E. Coit  VS Fidelity Assurance Associate | RG08379968 |

### ADDITIONAL ADDRESSEES

Stebner & Associates
Attn:  Stebner, Kathryn A.
870 Market Street
Suite 1212
San Francisco, CA   94102

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO)* :
FIDELITY ASSURANCE ASSOCIATES, LLC; FIDELITY OF GEORGETOWN, INC.;
FINANCIAL SERVICES CONSULTANTS, INC.; MILLS, POTOCZAK & COMPANY;
[see attached for additional defendants]

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTA DEMANDANDO EL DEMANDANTE)* :
MARION E. COIT on her behalf and
on behalf of others similarly situated

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

ENDORSED
FILED
ALAMEDA COUNTY

APR 03 2008

CLERK OF THE SUPERIOR COURT
By SUSAN ERICKSON
Deputy

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DIAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted puede usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>Alameda Superior Court | CASE NUMBER<br>*(Número del Caso):* RG08379968 |
|---|---|

1225 Fallon Street                    Oakland, CA 94612

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

Robert S. Arns                    The Arns Law Firm
515 Folsom Street, Third Floor    San Francisco, CA   94105
(415) 495-7800

| DATE: APR 03 2008<br>*(Fecha)* | PAT SWEETEN<br>EXECUTIVE OFFICER/CLERK | Clerk, by<br>*(Secretario)* | SUSAN ERICKSON | , Deputy<br>*(Adjunto)* |
|---|---|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify)* :

3. ☐ on behalf of *(specify)* :
   under: ☐ CCP 416.10 (corporation)        ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
          ☐ other *(specify)* :
4. ☐ by personal delivery on *(date)* :

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]
Martin Dean's Essential Forms ™

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465

Coit

**SUM-200(A)**

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Coit v. Fidelity | |

### INSTRUCTIONS FOR USE

➤ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

➤ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

List additional parties *(Check only one box. Use a separate page for each type of party.)*:

☐ Plaintiff    ☒ Defendant    ☐ Cross-Complainant    ☐ Cross-Defendant

DULUDE & CARMOUCHE, INC.;   RICHARD H. GUILFORD; BRAD C. THOMPSON;
BRENDA TLUCZEK; WILLIAM J. CARMOUCHE; ESTUKO DULUDE; F. NEIL THOMPSON;
ANTHONY FEUER and DOES 1 to 500, inclusive.

Page _____ of _____

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]
Martin Dean's
ESSENTIAL FORMS™

**ADDITIONAL PARTIES ATTACHMENT**
Attachment to Summons    Coit

**ALTERNATIVE DISPUTE RESOLUTION**
**INFORMATION PACKAGE**
**Effective April 15, 2005**

**Instructions to Plaintiff / Cross-Complainant**

> In all general civil cases filed in the trial courts after June 30, 2001, the plaintiff
> is required to serve a copy of this ADR information package on each defendant.

California Rules of Court, Rule 201.9 (Excerpt)

(a) Each court must make available to the plaintiff, at the time of filing of the
complaint, an Alternative Dispute Resolution (ADR) information package that
includes, at a minimum, all of the following:

(1) General information about the potential advantages and disadvantages
of ADR and descriptions of the principal ADR processes . . .

(2) Information about the ADR programs available in that court . . .

(3) In counties that are participating in the Dispute Resolution Programs
Act (DRPA), information about the availability of local dispute resolution
programs funded under the DRPA . . .

(4) An ADR stipulation form that parties may use to stipulate to the use
of an ADR process.

(b) Court may make package available on Web site . . .

**(c) The plaintiff must serve a copy of the ADR information package on
each defendant along with the complaint. Cross-complainants must serve a
copy of the ADR information package on any new parties to the action
along with the cross-complaint.**



## GENERAL INFORMATION ABOUT ADR

### Introduction to Alternative Dispute Resolution

Did you know that most civil lawsuits settle without a trial? And did you know that there are a number of ways to resolve civil disputes without having to sue somebody? These alternatives to a lawsuit are known as alternative dispute resolution (also called ADR). The most common forms of ADR are mediation, arbitration, and neutral evaluation. There are a number of other kinds of ADR as well.

In ADR, trained, impartial persons decide disputes or help parties decide disputes themselves. These persons are called neutrals. In mediation, for example, the neutral is the mediator. Neutrals normally are chosen by the disputing parties or by the court. Neutrals can help parties resolve disputes without having to go to court.

ADR is not new. ADR is available in many communities through court-connected and community dispute resolution programs and private neutrals.

### Advantages of Alternative Dispute Resolution

ADR can have a number of advantages over a lawsuit:

- **ADR can be speedier.** A dispute often can be resolved in a matter of months, even weeks, through ADR, while a lawsuit can take years.

- **ADR can save money.** Court costs, attorney fees, and expert witness fees can be saved.

- **ADR can permit more participation.** With ADR, the parties may have more chances to tell their side of the story than in court and may have more control over the outcome.

- **ADR can be flexible.** The parties can choose the ADR process that is best for them.

- **ADR can be cooperative.** In mediation, for example, the parties having a dispute may work together with the neutral to resolve the dispute and agree to a remedy that makes sense to them, rather than work against each other.

- **ADR can reduce stress.** There are fewer, if any, court appearances. And because ADR can be speedier, cheaper, and can create an atmosphere in which the parties are normally cooperative, ADR is easier on the nerves. The parties don't have a lawsuit hanging over their heads. For all the above reasons, many people have reported a high degree of satisfaction with ADR.

Because of these advantages, many parties choose ADR to resolve a dispute instead of filing a lawsuit. Even when a lawsuit has been filed, ADR can be used before the parties' positions harden and the lawsuit becomes costly. ADR has been used to resolve disputes even after a trial, when the result is appealed.

### Disadvantages of Alternative Dispute Resolution

ADR may not be suitable for every dispute.

If ADR is binding, the parties normally give up most court protections, including a decision by a judge or jury under formal rules of evidence and procedure and review for legal error by an appellate court.

There generally is less opportunity to find out about the other side's case with ADR than with litigation. ADR may not be effective if it takes place before the parties have sufficient information to resolve the dispute.

The neutral may charge a fee for his or her services.

If a dispute is not resolved through ADR, the parties may have to put time and money into both ADR and a lawsuit.

Lawsuits must be brought within specified periods of time, known as statutes of limitations. Parties must be careful not to let a statute of limitations run out while a dispute is in an ADR process.



# Three Common Types of Alternative Dispute Resolution

This section describes the forms of ADR most often found in the California state courts and discusses when each may be right for a dispute.

### Mediation

In mediation, a neutral (the mediator) assists the parties in reaching a mutually acceptable resolution of their dispute. Unlike lawsuits or some other types of ADR, the mediator does not decide how the dispute is to be resolved; the parties do.

Mediation is a cooperative process in which the parties work together toward a resolution that tries to meet everyone's interests, instead of working against each other where at least one party loses. Mediation normally leads to better relations between the parties and to resolutions that hold up. For example, mediation has been very successful in family disputes, particularly with child custody and visitation.

Mediation is particularly effective when the parties have a continuing relationship, like neighbors or business people. Mediation also is very effective where personal feelings are getting in the way of a resolution. This is because mediation normally gives the parties a chance to let out their feelings and find out how they each see things.

Mediation may not be a good idea when one party is unwilling to discuss a resolution or when one party has been a victim of the other or has unequal bargaining power in the mediation. However, mediation can be successful for victims seeking restitution from offenders. A mediator can meet with the parties separately when there has been violence between them.

### Arbitration

In arbitration, a neutral (the arbitrator) reviews evidence, hears arguments, and makes a decision (award) to resolve the dispute. Arbitration normally is more informal and much speedier and less expensive than a lawsuit. Often a case that may take a week to try in court can be heard by an arbitrator in a matter of hours, because evidence can be submitted by documents (like medical reports and bills and business records) rather than by testimony.

There are two kinds of arbitration in California: (1) Private arbitration, by agreement of the parties involved in the dispute, takes place outside of the courts and is normally binding. In most cases "binding" means that the arbitrator's decision (award) is final and there will not be a trial or an appeal of that decision. (2) "Judicial arbitration" takes place within the court process and is not binding unless the parties agree at the outset to be bound. A party to this kind of arbitration who does not like a judicial arbitration award may file a request for trial with the court within a specified time. However, if that party does not do better in the trial than in arbitration, he or she may have to pay a penalty.

Arbitration is best for cases where the parties want a decision without the expense of a trial. Arbitration may be better than mediation when the parties have no relationship except for the dispute.

Arbitration may not be a good idea when the parties want to decide on the outcome of their dispute themselves.

### Neutral Evaluation

In evaluation, a neutral (the evaluator) gives an opinion on the strengths and weaknesses of each party's evidence and arguments and makes an evaluation of the case. Each party gets a chance to present his or her side and hear the other side. This may lead to a settlement or at least help the parties prepare to resolve the dispute later on. If the neutral evaluation does not resolve the dispute, the parties may go to court or try another form of ADR.

Neutral evaluation, like mediation, can come early in the dispute and save time and money.

Neutral evaluation is most effective when a party has an unrealistic view of the dispute, when the only real issue is what the case is worth, or when there are technical or scientific questions to be worked out.

Neutral evaluation may not be a good idea when it is too soon to tell what the case is worth or if the dispute is about something besides money, like a neighbor playing loud music late at night.



## Other Types of Alternative Dispute Resolution

There are several other types of ADR besides mediation, arbitration, and neutral evaluation. Some of these are conciliation, settlement conferences, fact-finding, mini-trials, and summary jury trials. Sometimes parties will try a combination of ADR methods. The important thing is to try to find the type or types of ADR that are most likely to resolve your dispute.

The selection of a neutral is an important decision. There is no legal requirement that the neutral be licensed or hold any particular certificate. However, some programs have established qualification requirements for neutrals. You may wish to inquire about the qualifications of any neutral you are considering.

Agreements reached through ADR normally are put in writing by the neutral and, if the parties wish, may become binding contracts that can be enforced by a judge.

You may wish to seek the advice of an attorney about your legal rights and other matters relating to the dispute.

## Help Finding an Alternative Dispute Resolution Provider in Your Community

To locate a dispute resolution program or private neutral in your community:

- **Visit the Court's Web site.** The Alameda County Superior Court maintains a list of court-connected mediators, neutral evaluators, and private arbitrators at http://www.co.alameda.ca.us/courts/adr.htm.

- **Contact the Small Claims Court Legal Advisor.** The small claims legal advisor for Alameda County is located at the Wiley W. Manuel Courthouse, Self-Help Center. The phone number is 510-268-7665.

- **Visit the California Department of Consumer Affairs' Web site.** The Department of Consumer Affairs (also called the DCA) has posted a list of conflict resolution programs throughout the state. The list can be found at http://www.dca.ca.gov/r_r/mediati1.htm

  You can also call the Department of Consumer Affairs, Consumer Information Center, at 800-952-5210.

- **Contact your local bar association.** You can find a list of local bar associations in California on the State Bar Web site at http://www.calbar.org/2lin/2bar.htm.

  If you cannot find a bar association for your area on the State Bar Web site, check the yellow pages of your telephone book under "Associations."

- **Look in the yellow pages** of your telephone book under "Arbitrators" or "Mediators."

- **Automotive Repair, Smog Check:** The California Bureau of Automotive Repair (also known as BAR) offers a free mediation service for consumers who are dissatisfied with an auto repair or a smog check, or who dispute an invoice for such services. BAR registers and regulates California automotive repair facilities and licenses smog, lamp, and brake inspection stations. Learn more at http://smogcheck.ca.gov/smogweb/geninfo/otherinfo/mediation.htm or call 800-952-5210.

- **Attorney Fees:** The State Bar of California administers a mandatory fee arbitration program to resolve attorney fee disputes between lawyers and their clients. The program is an informal, low-cost forum and is mandatory for a lawyer if a client requests it. Mediation of attorney fees disputes may also be available in some areas of California. Learn more at http://www.calbar.org/2bar/3arb/3arbndx.htm or call 415-538-2020.

## DISPUTE RESOLUTION PROGRAMS IN ALAMEDA COUNTY

**Mediation Services**
**222278 Redwood Road, Castro Valley, CA 94546**
Phone: (510) 733-4940    fax: (510) 733-4945
Provides a panel of mediators to assist in the process of reaching an agreement in the areas of Neighborhood Disputes, Child Custody, Divorce, Parent/Teel Conflicts, Home Owners Association, Business, Real Estate, Employer/Employee, and Fremont Rent Increases.

**East Bay Community Mediation**
**1968 San Pablo Avenue, Berkeley, CA 94702-1612**
Phone: (510) 548-2377    fax: (510) 548-4051
EBCM is a community-based mediation program created by the union of Berkeley Dispute Resolution Service and Conciliation Forums of Oakland. EBCM offers counseling on options and approaches to resolving a dispute, mediation, large-group conflict facilitation, and conflict resolution skills workshops.

**Catholic Charities of the East Bay: Oakland – Main Office**
**433 Jefferson Street, Oakland, CA 94607**
Phone: (510) 768-3100    fax: (510) 451-6998
Mediators are responsible for mediation sessions involving the youth, victim and family members to work towards a mutually agreeable restitution agreement. Also provide free workshops in anger management and mediation.

**Center for Community Dispute Settlement**
**1789 Barcelona Street, Livermore, CA 94550**
Phone: (925) 373-1035
Provides services in Tri-Valley for all of Alameda County.    Program goals are to increase the number of court cases resolved, mediating small claims cases four days per week, and training youth in listening and conflict resolution skills.

**California Lawyers for the Arts: Oakland Office**
**1212 Broadway Street, Suite 837, Oakland, CA 94612**
Phone: (510) 444-6351    fax: (510) 444-6352
This program increases the resolution of arts related disputes such as artistic control, ownership of intellectual property, credit for work performed or produced and contract issues, through the use of alternative dispute resolution.    It also increases the capacity to provide services for counseling, conciliation and administration of mediation, arbitration and meeting facilitation.



# ALAMEDA COUNTY SUPERIOR COURT
## ADR PROGRAM

### ADR Program Administrator

Pursuant to California Rule of Court 1580.3, the presiding judge of the Superior Court of California, County of Alameda has designated Benjamin D. Stough, Berkeley Trial Court Administrator, to serve as ADR program administrator.

A Plaintiff may elect, the parties may stipulate or a judge may refer a case to Judicial Arbitration. The Judicial Arbitration Program Coordinator may be contacted at (510) 670-6646.

### The Judicial Arbitration Process

**Appointment of Arbitrator (must be appointed within 30 days after referral per *CRC 1605*).**
⇒ Parties mailed list of five names from which to select. (List mailed within 5-10 business days after receipt of referral).

⇒ Each party may reject one of the names listed (10 calendar days per *CRC 1605a*)

⇒ The administrator randomly appoints the arbitrators from the names remaining on the list. If only one remains then is deemed appointed.

**Assignment of Case *(CRC 1605a(4))***
⇒ Within 15 days of notice of the appointment, the arbitrator shall contact parties in writing about time, date, and place of the hearing. The parties shall receive at least 30 days notice prior to the hearing.

**Hearings *(CRC 1611)***
⇒ Shall be scheduled so as to be completed not less than 35 days nor more than 90 days from the date the arbitrator was assigned. For good cause shown, the case may be continued an additional 90 days by the Case Management Judge.

**Award of Arbitrator *(CRC 1615b & c)***
⇒ Arbitrator must file an award within 10 days after conclusion of the arbitration hearing. The court may allow 20 additional days upon application of arbitrator is cases of unusual length or complexity.

⇒ Within 30 days of the filing of the award the parties may file a Request for Trial de Novo. The clerk shall enter the award as a judgment after 30 days provided a Trial de Novo has not been filed.

### Return of Case to Court
⇒ Upon Filing of Trial de Novo the action is returned to Case Management Judge for further proceedings. *(CRC 1616 & Local Rule 6.4)*

⇒ If Trial de Novo is not filed then judgment is entered and the Case Management Judge is notified *(CRC 1615c & Local Rule 6.6)*

⇒ If parties indicate a settlement then case is returned to Case Management Judge and case is continued 45 days for an Order to Show Cause RE filing a dismissal. *(Local Rule 6.6)*

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA

| Allen E. Broussard Justice Center | Berkeley Courthouse | George E. McDonald Hall of Justice |
|---|---|---|
| 600 Washington Street, Oakland, CA 94707 | 2000 Center Street, 2nd FL, Berkeley, CA 94704 | 2233 Shoreline Drive, Alameda, CA 94501 |
| Fremont Hall of Justice | Gale/Schenone Hall of Justice | Wiley W. Manuel Courthouse |
| 39439 Paseo Padre Parkway, Fremont, CA 94538 | 5672 Stoneridge Drive, Pleasanton, CA 94588 | 661 Washington Street, Oakland, CA 94607 |
| Hayward Hall of Justice | René C. Davidson Courthouse | |
| 24405 Amador Street, Hayward, CA 94544 | 1225 Fallon Street, Oakland, CA 94612 | |

1

Case No.: _____

          Plaintiff

   vs.

## STIPULATION FOR ALTERNATIVE DISPUTE RESOLUTION (ADR)

          Defendant

The parties by and through their attorneys of record hereby stipulate to submit the within

controversy to the following Alternative Dispute Resolution process:

_____

_____

_____

_____

### ORDER

The foregoing stipulation having been read and considered, and good cause appearing, now therefore,

IT IS SO ORDERED.

IT IS FURTHER ORDERED that the matter be set for Order to Show Cause Hearing RE:

Dismissal on _____ at _____ a.m./p.m. in Department _____

Dated: _____

_____
JUDGE OF THE SUPERIOR COURT

(SEAL)

Rev 4/05

ROBERT S. ARNS (SB # 65071)
MORGAN C. SMITH (SB# 168146)
JONATHAN E. DAVIS (SB# 191346)
**THE ARNS LAW FIRM**
515 Folsom Street, 3rd Floor
San Francisco, CA 94105
Tel:   (415) 495-7800
Fax:   (415) 495-7888

KATHRYN A. STEBNER (SB #121088)
**STEBNER AND ASSOCIATES**
870 Market Street, Suite 1212
San Francisco, CA  94102
Tel:   (415) 362-9800
Fax:   (415) 362-9801

Attorneys for Plaintiffs
MARION E. COIT on her behalf and
on behalf of others similarly situated,

ENDORSED
FILED
ALAMEDA COUNTY

APR 0 3 2008

CLERK OF THE SUPERIOR COURT
By __SUSAN ERICKSON__
                              Deputy

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF ALAMEDA

| MARION E. COIT on her behalf and on behalf of others similarly situated, | ) ) ) | No. **RG08379968** |
|---|---|---|
| Plaintiffs, | ) ) ) ) | **CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF** |
| vs. | ) ) ) | |
| FIDELITY ASSURANCE ASSOCIATES, LLC; FIDELITY OF GEORGETOWN, INC.; FINANCIAL SERVICES CONSULTANTS, INC.; MILLS, POTOCZAK & COMPANY; DULUDE & CARMOUCHE, INC.;  RICHARD H. GUILFORD; BRAD C. THOMPSON; BRENDA TLUCZEK; WILLIAM J. CARMOUCHE; ESTUKO DULUDE; F. NEIL THOMPSON; ANTHONY FEUER and DOES 1 to 500, inclusive | ) ) ) ) ) ) ) ) ) ) ) ) ) | 1. **Negligence** <br> 2. **Negligent Misrepresentation** <br> 3. **Fraud** <br> 4. **Consumer Legal Remedies Act** [Civ. Code § 1750 *et seq.*] <br> 5. **Unfair Business Practices** [Bus. & Prof. Code §17200 *et seq.*] <br> 6. **Rescission of Contract** [Civil Code §§1667, 1668, 1751] <br> 7. **Elder Financial Abuse** [WIC §15610.30] |
| Defendants. | ) ) ) ) | 8. **Negligence Per Se** [Code Corp., §§25110, 25401 *et seq.* and 25500 *et seq.*] |

-1-
CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

The following is a complaint for damages brought by MARION E. COIT on her behalf and on behalf of others similarly situated and by and through her attorneys who allege on information and belief as follows.   Plaintiffs alleged in summary that defendants, and each of them, were involved in a conspiracy to defraud and violate California law including, but not limited to, the following ways:

1. Mislabeling and misrepresenting the investment product as a "Viatical" when they are "life settlements" as a matter of law (*See also* Cal. Code Regs. Tit 10 §2548.2, Cal. Code Regs. §25023 and Corp. Code § 25023);

2. Selling Viatical Settlements without a license as required by Cal. Code Ins. § 10113.2;

3. Fraudulently concealing the risk of Viatical Settlements;

4. Obtaining fraudulent "Doctor's" reports on the life expectancy of the Viators from persons who are not doctors nor qualified to make the life expectancy determinations as advertised;

5. Failing to disclose adverse tax consequences and possible alternatives to Viatical Settlements, as required Cal. Code Ins. § 10113.2;

6. Engaging in false or misleading advertising, solicitation, or practice as prohibited by Cal. Code Ins. § 10113.2;

7. Selling of securities that are not qualified, nor exempt, under the Corp. Code §§25110, 25503, including violating the exemption requirements of Corp. Code §25102 by accepting investments with valuations of more than 10% investment of net worth of the investor and violation of State Law, or in selling Viatical Settlements to persons that have less than the required net worth requirements.

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

## I.    PARTIES

1. Plaintiff MARION E. COIT is a resident of the State of California, County of Alameda.

2. Defendant FIDELITY ASSURANCE ASSOCIATES, LLC. ("FIDELITY") on information and belief, is a Delaware Corporation that is in the business of selling Viatical interest.

3. Defendant FIDELITY OF GEORGETOWN, INC. on information and belief, is a Delaware Corporation that is in the business of selling Viatical interest.

4. Defendant FINANCIAL SERVICES CONSULTANTS, INC., is run by defendant F. NEIL THOMPSON and consults and operates with FIDELITY ASSURANCE ASSOCIATES, LLC.

5. Defendant MILLS, POTOCZAK & COMPANY, ("MILLS") on information and belief, is an Ohio corporation, and managed the trust accounts for the various Viatical interests purchased by the Plaintiff COIT.

6. Defendant RICHARD H. GUILFORD, on information and belief, is a resident of the Commonwealth of Virginia residing at 10305 Buckwood Lane, Mechanicsville, Virginia, Richmond, VA 23116. Defendant GUILFORD is the Chairman and the Managing Member of FIDELITY and was a director of FIDELITY ASSURANCE, LTD d/b/a FIDELITY ASSISTANCE, INC. and BENEFICIAL beginning in September 11, 1998 and continuing at least until the year 2000.

7. Defendant BRAD C. THOMPSON, on information and belief, is a resident of the state of Maryland, residing at 8348 Fairwood Court, Pasadena, M D 21122. Defendant THOMPSON is a Certified Public Accountant in Maryland. Defendant THOMPSON was a director, shareholder and executive officer of the BENEFICIAL, and was the President and Managing Member of FIDELITY from November 18, 1997 through 2000.

8. Defendant DULUDE & CARMOUCHE, INC., ("DULUDE") on information and belief, is a California Corporation that is in the business of selling Viatical interest. Defendant DULUDE is located at 337 North Vineyard Street, Ontario, California 91764.

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

9. Defendant BRENDA TLUCZEK aka BRENDA CARMOCHE, on information and belief, was an officer of DULUDE, as well as a member of the board for FIDELITY and resides at, 337 North Vineyard Street, Ontario, California 91764 and/or 5629 Carmello Court, Rancho Cucamonga, California 91739.

10. Defendant WILLIAM J. CARMOUCHE, on information and belief, is a Vice President for FIDELITY and resides at 5629 Carmello Court, Rancho Cucamonga, California 91739.

11. Defendant ESTUKO DULUDE aka ETSUKO REEVES, on information and belief, is a member of the board for FIDELITY and resides at 5599 Carmello Court, Rancho Cucamonga, California 91739.

12. Defendant F. NEIL THOMPSON, on information and belief, is the Vice President for FIDELITY and resides at 10006 Bellona Court, Richmond, Virginia 23233.

13. Defendant ANTHONY FEUER, on information and belief, was an Agent for Fidelity selling interesting Viatical Interest to Plaintiffs. This Defendant is the FIDELITY AGENT who sold the subject Viatical Settlements to Plaintiff MARION E. COIT, and he currently resides at 2010 Crow Canyon Place, #190, San Ramon, California, 94583.

14. The true names and capacities of Defendants sued in the Complaint under the fictitious names of Does 1 through 500, inclusive, are unknown to Plaintiffs who therefore sue such Defendants by such fictitious names.

15. All the Defendants described above shall collectively be referred to as "Defendants" in this complaint.

16. Whenever reference is made in this complaint to any act of Defendants, such allegation shall mean that each Defendant acted individually and jointly with the other Defendants named in that cause of action.

17. Whenever reference is made in this complaint to any act of any corporate or other business Defendant, such allegation shall mean that such corporation or other business did the acts alleged in the complaint through its officers, directors, employees, agents and/or representatives while they were acting within the actual or ostensible scope of their authority.

18. At all relevant times, each of the Defendants has acted as an agent, representative, or employee of each of the other Defendants and has acted within the course and scope of said agency or representation or employment with respect to the causes of action in this complaint.

19. At all relevant times, each Defendant has committed the acts, caused others to commit the acts, or permitted others to commit the acts referred to in this complaint.

20. Defendants FIDELITY ASSURANCE ASSOCIATES, LLC., FIDELITY OF GEORGETOWN, INC. and FINANCIAL SERVICES CONSULTANTS, INC. are together the FIDELITY COMPANY DEFENDANTS.

21. DOES 1 to 50 are the FIDELITY AGENTS, who were involved in the conspiracies to defraud as outlined below.

22. DOES 51 to 100 are the FIDELITY BROKERS, who were involved in the conspiracies to defraud as outlined below.

23. DOES 101 to 150 are the FIDELITY PHYSICIANS.

24. DOES 151 to 200 are the FIDELITY TRUST DEFENDANTS.

25. DOES 201 to 250 are the FIDELITY OFFICER DEFENDANTS, which also includes defendants RICHARD H. GUILFORD, BRAD C. THOMPSON, BRENDA TLUCZEK, WILLIAM J. CARMOUCHE, ESTUKO DULUDE and F. NEIL THOMPSON.

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

26. DOES 251 to 300 are additional and unknown FIDELITY COMPANY DEFENDANTS.

## II.    OTHERS WHO PARTICIPATED IN THE CONSPIRACY BUT ARE NOT NAMED AS DEFENDANTS HEREIN

27. George Kindness was the owner and director of Amscot Medical Labs, Inc. ("Amscot"), an Ohio Corporation. Kindness was the primary person used by THE FIDELITY COMPANY DEFENDANTS and DULUDE to evaluate and certify the life expectancies of those Viators who were not suffering from Acquired Immune Deficiency Syndrome ("AIDS"). THE FIDELITY COMPANY DEFENDANTS and DULUDE held Kindness out as a qualified and competent physician, but in fact, Kindness was not a physician, nor was he qualified or competent to provide life expectancy certifications. In a scam unrelated to Viatical Settlements and the Fidelity Companies, Kindness pled guilty in July 2005 to federal charges of aiding and abetting the introduction of a misbranded drug, an unapproved cancer vaccine, into interstate commerce with the intent to mislead. Thelma Villanueva and Irena Sheyn were life expectancy physicians employed by Kindness and Amscot, who also purported to conduct life expectancy determinations on behalf of the FIDELITY and DULUDE.

28. Kindness, Villanueva, Sheyn and Sanchez are collectively referred to herein as the "FIDELITY PHYSICIANS." Although the FIDELITY PHYSICIANS were active and knowing participants in the conspiracy as alleged herein, they are not named as Defendants at this time.

## III.    VENUE

29. Venue in this action is proper in the County of Alameda based upon the fact that the subject contracts for Viatical Interests were entered into in the County of Alameda.

30. Additionally, Plaintiffs contend that the choice of law and forum selected by The FIDELITY COMPANY DEFENDANTSwithin its adhesion contract (Virginia) is unconscionable as a matter of law, and void under California law. (See *America Online, Inc. v. Superior Court* (2001) 90 Cal.App.4th 1.)

## IV.    SUBSTANTIVE FACTS TO ALL CLAIMS

### A. THE FIDELITY COMPANY DEFENDANTS AND DULUDE OBTAINED FUNDS FROM THE PURCHASERS

31. THE FIDELITY COMPANY DEFENDANTS and DULUDE began purchasing Policies and selling Viatical Settlements in 2000 and continued to operate through the present

32. FIDELITY solicited Purchasers directly and through the FIDELITY AGENTS to induce Purchasers to acquire the Viatical Investments. FIDELITY provided marketing materials to the FIDELITY AGENTS, which the FIDELITY AGENTS used to induce potential Purchasers to purchase Viatical Investments. In addition, the FIDELITY AGENTS developed and used their own marketing materials.

33. Purchasers acquired the FIDELITY Companies' Viatical Settlements by signing a "Purchase Authorization Agreement (California Residents)" and mailing, or having their FIDELITY Agent mail that executed document, along with the Purchaser's payment, to Defendant MILLS in Ohio. The Purchasers' funds were then placed in MILLS's escrow accounts, which held the funds of all Purchasers until such time as THE FIDELITY

COMPANY DEFENDANTS and DULUDE used those funds to acquire a Policy from a Viator, usually through a FIDELITY BROKER.

34. The Purchase Authorization Agreements purportedly governed the terms of the Viatical Investment purchase. Pursuant to the terms of the Purchase Authorization Agreements, FIDELITY acted as the Purchasers' agent for the purchase of interests in the viaticated Policies (i.e. the Viatical Investments). In each Purchase Authorization Agreement, FIDELITY agreed to represent a Purchaser (defined as the "Principal" in the Purchase Authorization Agreement) for the purpose of identifying, qualifying, and purchasing Policies and all related death benefits in accordance with the purchasing criteria and instructions set forth in the Purchase Authorization Agreement. Each Purchase Authorization Agreement also set forth the amount of the investment, the duration of the investment, which was equivalent to the Viator's Life Expectancy, the percentage return on investment, and the total return on the investment.

35. The percentage return and Purchasers' profit were dependent upon the Viator's life expectancy. Purchasers who desired a Viator with a life expectancy of 12 months or less were promised a 12 percent profit. Purchasers who were willing to acquire a Viatical Investment in a Policy on a Viator with a life expectancy of 48 months were promised a profit of 60 percent.

## B.    THE FIDELITY COMPANY DEFENDANTS AND DULUDE USED THE PURCHASERS' FUNDS TO ACQUIRE POLICIES FROM VIATORS

36. Having collected funds from Purchasers, the FIDELITY Companies used the services of the FIDELITY BROKERS to identify and purchase Policies from Viators. Typically, FIDELITY accomplished this through the services of the FIDELITY BROKERS who would identify potential Viators and refer the Viators and their Policies to Defendants FIDELITY and DULUDE. After purportedly completing due diligence on

a referred Policy, THE FIDELITY COMPANY DEFENDANTS and DULUDE would bid on that Policy. When FIDELITY was the prevailing bidder, it would enter into a sales agreement with the broker for the right to receive the death benefits on the Policy.

37. FIDELITY was able to bid more for a Policy if a Viator was determined to have a short life expectancy. Indeed, there was no ready market for a Policy if a Viator's life expectancy exceeded four years.

38. The FIDELITY BROKERS provided FIDELITY with the medical records of the subject Viators as part of the bidding process. FIDELITY sent the Viators' medical records to the FIDELITY PHYSICIANS to obtain purportedly accurate projections of the Viators' life expectancies. The FIDELITY PHYSICIANS issued a Certificate of Life Expectancy for each Viator, purportedly documenting the Viator's terminal illness and life expectancy.

39. FIDELITY purchased policies through a Viatical Settlement process using the Purchasers' funds, which were held in MILLS's escrow account. FIDELITY determined which Purchaser funds would be matched with particular Policies. For example, Purchasers who indicated their desire to invest for 48 months were matched with Policies for which the Viator had a purported life expectancy of 48 months.

40. At each Viatical settlement, MILLS, acting pursuant to instructions contained within the Trustee Agreement, was instructed to disburse funds from the escrow account to: (i) the FIDELITY BROKER and/or the Viator (often the Viator was paid out of funds received by the broker); (ii) a premium reserve account to fund future insurance premium payments due through the viator's remaining life (this amount was equal to the premiums due through the victor's life expectancy - as determined by the FIDELITY PHYSICIANS - plus one year); (iii) MILLS's fee; and (iv) the FIDELITY Companies' commission or fee.

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

41. After the Viatical settlement, FIDELITY prepared a closing summary package for the Purchasers whose funds were used in the settlement.

42. Thereafter, as noted above, MILLS monitored the Policies, and paid the premiums when due. In the rare circumstance in which a Viator died, MILLS filed a death claim, took appropriate actions to recover the death benefits payable under the policy, and remitted the death benefits to the Purchasers in accordance with their interests in the Policy. More commonly, the Viator outlived the stated life expectancy. Because the Premium Funds escrowed for that Policy were sufficient only to pay premiums for one year beyond the Viator's life expectancy, there were insufficient funds to pay these premiums.

## C. THE FIDELITY OFFICER DEFENDANTS KNOWINGLY PROCURED FALSE LIFE EXPECTANCY DETERMINATIONS FROM THE FIDELITY PHYSICIANS

43. Generally, as noted above, a market for Viaticals exists only if a Policy insures the life of a person who is expected to die, due to terminal illness or advanced age, within a relatively short period of time (i.e., four years or less). Purchasing the death benefits of a Policy covering the life of a young or healthy person is not an attractive investment opportunity.

44. The estimated life expectancy is thus an important factor in determining the value of a Viator's Policy and any related Viatical Investments. The shorter the Viator's life expectancy, the higher the price that Viator's Policy will bring.

45. In selling Viatical Settlements to Purchasers, the Beneficial Companies and the FIDELITY AGENTS stressed the independence and competence of the FIDELITY Physicians who determined the life expectancy of the Victors. Marketing materials distributed by the FIDELITY AGENTS to potential investors described the FIDELITY

Physicians as "independent" physicians. The FIDELITY marketing materials also explained that "Fidelity then engages in a thorough review of the Viator's insurance policy and medical information." Fidelity then asserts that "an independent medical expert reviews the Viator's medical information."

46. In practice, however, the life expectancy evaluations provided by the FIDELITY PHYSICIANS were neither accurate nor reliable. Indeed, the primary "physician" used by THE FIDELITY COMPANY DEFENDANTS and DULUDE to conduct life expectancy determination, George Kindness, was not a physician at all.

47. THE FIDELITY COMPANY DEFENDANTS and DULUDE, through their officers, directors and employees, the FIDELITY AGENTS, the FIDELITY BROKERS all knew or should have known that the life expectancy evaluations provided by the FIDELITY PHYSICIANS were inaccurate, unreliable and artificially low.

48. Indeed, certain of the FIDELITY OFFICER DEFENDANTS, including THOMPSON AND GUILFORD, actively conspired with the FIDELITY PHYSICIANS to create life expectancy certifications which were materially false. These Defendants caused the FIDELITY PHYSICIANS to purposefully underestimate the life expectancy of the Viator, so that the Viator's life expectancy would coincide with the life expectancy selected by the Purchasers whose funds were available and on deposit in MILLS's escrow accounts. These Defendants and the FIDELITY PHYSICIANS routinely falsified the life expectancies of the Viators so that FIDELITY could bid on, acquire, and viaticate the Policies and sell the Viatical Settlements to the Purchasers who had been required specify the desired duration of their investment and in so doing, specified the life expectancy of the Viator whose Policy they wished to acquire.

49. In the vast majority of cases, the life expectancy projections were grossly inaccurate, and most of the Viators have lived far beyond their estimated life expectancies.

50. The FIDELITY OFFICER DEFENDANTS, including THOMPSON AND GUILFORD, and the FIDELITY AGENTS knew or should have known that the Purchasers would rely on their representations concerning the Viators' life expectancies and on Beneficial to use their funds to purchase Policies from Viators whose life expectancies had been verified by independent physicians, as promised, and the Purchasers, in deciding whether to purchase Viatical Investments, did reasonably and justifiably rely on the Defendants' representations regarding the life expectancy of the Viators.

51. Because of, among other things, the gross inaccuracy of the life expectancy evaluations, the costs of maintaining the policies has far exceeded what was expected, and the return to investors has either been denied or delayed and diminished.

**D.    THE DEFENDANTS' PARTICIPATION IN, KNOWLEDGE OF, AND BENEFIT FROM THE NEGLIGENT AND INTENTIONAL WRONGFUL CONDUCT**

52. The Defendants are, and at all times held themselves out as, highly sophisticated professionals in the Viatical industry with extensive experience in analyzing, evaluating, researching, recommending and purchasing Policies and in selling Viatical Investments.

53. Defendants had access to all manner of printed and online research data, including but not limited to, NASD and insurance industry bulletins with which to guide them in carrying out their fiduciary and statutory duties and duties of care to fully explain, and disclose to Purchasers all material facts relating to the Viatical Settlements the Defendants sold to the Purchasers.

54. Yet, from 1996 through the present, when the hazards and risks of Viatical Settlements were well known among those in the Viatical industry, Defendants repeatedly, continuously and recklessly solicited and convinced Purchasers to risk millions of dollars in these dangerous investment products. By that time, there had been many highly publicized collapses of Viatical Investment Companies, due to, among

other things, the high susceptibility of these ventures to various schemes and artifices to divert investor money. Equally well-publicized were the extraordinary risks attendant to the purchase of Viatical Settlements as detailed below.

55. Defendants were well aware of the risks of purchasing Viatical Investments, including the risks that: (i) the life expectancy determinations could be inaccurate; (ii) the Viator could be misdiagnosed; (iii) the life expectancy for patients with certain illnesses, such as HIV, had increased as a result of the development of new medications; (iv) funds sufficient to pay premiums on the Policies could be unavailable; (v) the Purchasers could be required to pay the premiums on the Policies; (vi) the insurer could contest the validity of the Policy or re fuse to pay the death benefit; (vii) term Policies could lapse before maturity; and (viii) other beneficiaries could claim the death benefit. Yet, in the vast majority of these cases, Defendants did not disclose, and in fact actively concealed, these risks from Purchasers.

56. Indeed, although the Defendants prepared a written statement which listed some, but not all of these risk factors, except for in a small percentage of cases, Defendants failed to provide this statement of risk factors to the Purchasers, and otherwise did not disclose to Purchasers the many and substantial risks of purchasing Viatical Settlements.

57. The Defendants also concealed from Purchasers the fact that fraud and other misconduct were regularly perpetrated in the Viatical industry, and that such practices pervaded THE FIDELITY COMPANY DEFENDANTS and DULUDE as well.

///

///

///

///

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

## E. SPECIFIC WRONGFUL CONDUCT OF THE FIDELITY AGENTS

58. The FIDELITY AGENTS were the liaisons between FIDELITY and its source of money, the Purchasers.

59. The FIDELITY AGENTS, who were paid substantial commissions of up to 25 percent on their sales of Viatical Settlements for the FIDELITY Companies, failed to conduct any meaningful due diligence on the Viatical industry, the FIDELITY Companies, the officers of the FIDELITY Companies, the FIDELITY PHYSICIANS, or any of their practices in acquiring Policies and determining life expectancies to confirm the truth of their representations to Purchasers.

60. THE FIDELITY COMPANY DEFENDANTS and DULUDE provided the FIDELITY AGENTS with training, brochures and other marketing materials, and with the contracts for the sale of the Viatical Investments. The FIDELITY AGENTS identified potential investors, including the Purchasers, communicated directly with those potential investors in an effort to induce them to purchase Viatical Settlements from the FIDELITY Companies, and provided these potential investors with marketing materials produced by the FIDELITY Companies, as well as materials produced by the FIDELITY AGENTS themselves. The FIDELITY AGENTS also executed contracts with Purchasers who purchased Viatical Settlements from the FIDELITY Companies. Each time a Purchaser purchased a Viatical, the FIDELITY AGENT received a commission of up to 25 percent of the amount invested. The longer the term of the investment, and/or the larger the sum invested, the larger the commission FIDELITY paid the FIDELITY AGENTS.

61. Each of the FIDELITY AGENTS owed common law and/or statutory duties to the Purchasers to fully disclose all material facts about the Viatical Investments, including the known risks of investing in the Viaticals. As described below, the FIDELITY

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

AGENTS breached these duties by misrepresenting certain material facts and by omitting other material facts concerning the FIDELITY Viatical Investments.

62. The laws of many of the states in which the FIDELITY AGENTS were operating, including California, required that the FIDELITY AGENTS selling Viatical Settlements register the Viatical Settlements as securities and possess a license or registration to sell these Viatical Investments. None of the FIDELITY AGENTS registered the Viatical Settlements they sold as securities and none possessed the license or registration necessary to sell Viatical Settlements within California.

63. The FIDELITY AGENTS negligently misrepresented material facts to the Purchasers and concealed from Purchasers the material facts, which should have been or were well known within the Viatical and insurance industries and by the Defendants and their co-conspirators: Viatical Settlements are highly risky investments and that the Viatical industry, generally, and the FIDELITY Companies, specifically, were beset by negligent and intentional wrongdoing that would ensure that the Purchasers would not recoup their principal investments, let alone a return on their investments .

64. The FIDELITY AGENTS' acts of affirmative misrepresentation and omission in connection with their sales to Purchasers were calculated to deceive Purchasers into acquiring Viatical Settlements by convincing the Purchasers that Viatical Settlements presented no risk and guaranteed substantial profits.

65. Specifically, the FIDELITY AGENTS disseminated to Purchasers marketing materials that misrepresented that Purchasers to "Take The Uncertainty Out! Put A Fixed Return In." "Viatical Settlement transactions involve the assignment of the beneficiary interest of a life insurance policy on the life of a terminally ill individual." Furthermore, the Marketing Materials state that "funds to purchase these policies come from COMPASSIONATE PURCHASERS. The terminally ill patient receives the money when they need it most and you the PURCHASER, receive the PROCEEDS of

the life insurance policy upon maturity and the SATISFACTION that you helped someone in their time of need."

66. The FIDELITY AGENTS disseminated marketing materials stating that Purchasers would earn a profit on their investments, how much of a profit they would earn, and how long it would take for the Purchaser to earn this profit.

67. According to these marketing materials, the longer the time period until "maturity" the greater the profit the investor would earn :

> 60% Profit* (48 month or less maturity)
>
> 42% Profit* ( 36 month or less maturity)
>
> 28% Profit * (24 month or less maturity)
>
> 12% Profit*(12 month or less maturity)

68. Defendants claimed Qualified Funds are ideal for placement into longer maturities which yield Maximum Profit. Other marketing materials used by the FIDELITY AGENTS promised Purchasers a 60 percent profit on a 48 month Viatical.

69. The FIDELITY AGENTS also provided Purchasers with marketing materials which purported to explain how the Viatical Investment process worked: "People living with a terminal illness are often faced with difficult financial choices. Viatical Settlement transactions provide terminally ill individuals an opportunity to convert existing life insurance policies into cash and enable them to receive a significant portion of the financial benefit of their policies at a time when additional financial resources are most needed. The Viatical Settlement process begins when a terminally ill person (the "viator") contacts a Licensed Viatical Settlement Broker and indicates they are interested in viaticating their life insurance policy. After obtaining the viator's application (including a consent to the release of medical records) from the Broker, Fidelity then engages in a thorough review of the viator's insurance policy and medical information. To be considered for viatication, Fidelity requires that the viator's life

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

insurance policy must be issued by an insurance company that has received a top rating from one of the major rating agencies (AM Best, Standard and Poor's, Moody's or Duff & Phelps). An independent medical expert reviews the viator's medical information and provides Fidelity with an estimated life expectancy for the viator. Fidelity then prepares a quote for the viator to sell the policy at a stated price. The amount of the offer is based on a variety of factors including, but not limited to, life expectancy, amount of policy, premiums, broker's fees and any acquisition costs."

70. The FIDELITY AGENTS at all times failed to advise the Purchasers that Viators routinely lived beyond their stated life expectancies, and in fact affirmatively concealed this fact from Purchasers.

71. The FIDELITY AGENTS failed to advise Purchasers that the FIDELITY Trustees was obligated to pay premiums on the Policies only for the life expectancy plus one year.

72. The FIDELITY AGENTS also failed to advise the Purchasers that when a Viator lived past his or her life expectancy, the Purchaser's expected return would diminish or vanish entirely, and that the Purchaser could lose the principal investment as well.

73. The FIDELITY AGENTS advised the Purchasers that the medical files of each Viator had been reviewed by an independent physician and that said physician had made an independent determination and had certified that each Viator's life expectancy was limited as reflected in the Purchase Agreement.

74. The FIDELITY AGENTS failed to advise Purchasers, however, that the FIDELITY PHYSICIANS used by the FIDELITY Companies to make life expectancy determinations and certifications made no meaningful review of the medical files of the Viators; that FIDELITY PHYSICIANS merely "rubber-stamped" the life expectancy certificate with whatever life expectancy THE FIDELITY COMPANY DEFENDANTS

and DULUDE and other Defendants in this case told the FIDELITY PHYSICIANS the Purchasers were willing to invest in.

75. Although the FIDELITY AGENTS advised Purchasers that George Kindness, who provided 75 percent of the Life Expectancy Certifications for the FIDELITY Companies was a physician, in truth and in fact, George Kindness had no medical degree, and was simply pretending to be a medical doctor.

76. The FIDELITY AGENTS also failed to advise the Purchasers of the other risks of purchasing Viatical Investments, including, but not limited to: the risk that the insurance company would not pay the death benefit because the Viator had obtained the Policy under false pretenses; the risk that the insurer would not pay the death benefit because of lack of proof that the Viator had died; the risk that a term policy could lapse before maturity; and the risk that competing claims would be made on the death benefits by other beneficiaries named in the Policy.

77. In many cases, the FIDELITY AGENTS also misrepresented to Purchasers that the return on investment they would receive from their purchase of the Viatical Settlements would not be taxable income, because it was income from an insurance policy. The FIDELITY AGENTS knew or should have known that any income generated by the Viatical Settlements was, in fact, taxable.

78. The FIDELITY AGENTS provided each Purchaser with a "Purchase Authorization Agreement." The Purchase Authorization Agreement set forth the terms of the agreement between each Purchaser and Beneficial. This agreement makes clear that FIDELITY was responsible for: identifying, qualifying and purchasing Policies; obtaining an independent medical review by physicians to provide a life expectancy determination; arranging for a trustee to become owner or irrevocable beneficiary of the policies; paying premiums on the Policy; monitoring the health status of the Viator; submitting claims for death benefits; and distributing those benefits.

79. The Purchase Authorization Agreements used by the FIDELITY AGENTS and the FIDELITY Companies provided that MILLS was responsible for paying premiums on the Policies, monitoring the progress of the Viator's medical condition, and to submit the appropriate claim forms upon death.

80. The FIDELITY AGENTS also advised the Purchasers that a trust account had been established to hold title to the Policies invested in by the Purchasers. According to those materials, MILLS was responsible to make premium payments from the cash reserves owned by the trust and make timely policy claims and distributions to purchasers.

81. The marketing materials the FIDELITY Agents provided to the Purchasers failed to inform Purchasers that the principals that the FIDELITY Companies had signatory authority over FIDELITY's escrow or trust accounts, and were able to, and in fact did divert Purchasers' funds to bank accounts they controlled.

82. The FIDELITY AGENTS also failed to inform Purchasers that the Trust Accounts contained insufficient funds to pay premiums on the Policies the FIDELITY Companies acquired, viaticated and sold to Purchasers.

83. Additionally, pursuant to Cal. Ins. Code §§1631, 10113.1 and 10113.2, it is unlawful and a misdemeanor to sell Interests in Viatical Settlements without obtaining a Viatical Settlement license from the State of California.

84. Plaintiffs are informed and believe that none of the FIDELITY AGENTS to this action possessed the required license to sell the interests in the Viatical Settlements to Plaintiffs herein. This failure was in violation of the law, and an illegal and wrongful act.

85. Additionally, such sections require that all Viatical Settlement licenses shall be required to disclose or advise any applicant for a Viatical settlement, at the time of solicitation for the Viatical settlement, of all of the following:

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

a.  Possible alternatives to Viatical Settlements for persons with catastrophic or life-threatening illness, including, but not limited to, accelerated benefits options that may be offered by the life insurer.

b.  Tax consequences that may result from entering into a Viatical Settlement.

c.  Consequences for interruption of public assistance as provided by information provided by the State Department of Health Services and the State Department of Social Services under §11022 of the Welfare and Institutions Code.

86. Plaintiffs are informed and believe that FIDELITY AGENTS never so informed Plaintiffs of such risk as required by law at any time.

## F.   PRIOR CONDUCT OF DEFENDANTS THOMPSON AND GUILFORD IN FAILED AND UNLAWFUL VIATICAL SALES COMPANIES

87. Defendants GUILFORD and THOMPSON were engaged by the Beneficial Companies and from at least April 2000 until August 2000, GUILFORD and THOMPSON were in charge of the day to day operations of Beneficial Companies and held senior executive positions. The Colorado Commissioner issued a permanent Cease and Desist Order against the sale of Viatical Settlements and all other securities by Defendants GUILFORD and THOMPSON in Colorado.

88. In June 2004, the Circuit Court for Baltimore City issued a Consent Order against one of the predecessor companies to FIDELITY ASSURANCE ASSOCIATES, owned and controlled by Defendants THOMPSON and GUILFORD, named BENEFICIAL ASSISTANCE, INC. Such court found that THOMPSON and GUILFORD and BENEFICIAL ASSISTANCE, INC. provided their sales agents with solicitation material that was materially false. For example, the sales and other solicitation material: (i) promised Purchasers "safe, high return assets for [their] portfolio" so that with the purchase of a Beneficial Viatical contract, they could "be on [their] way to financial security"; (ii) falsely informed Purchasers that the escrow agent is independent, when

-20-
CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

the companies controlled the escrow agent; provided materially misleading figures on the performance of the portfolio of Policies and the maturities of those Policies; and (iii) failed to inform Purchasers that funds in the premium escrow accounts were not sufficient to pay premium obligations.

89. The FIDELITY AGENTS knew or should have known that the Purchasers would rely on the aforementioned misrepresentations in deciding whether to purchase the FIDELITY Companies' Viatical Investments.

90. The Purchasers justifiably did rely upon the representations of the FIDELITY AGENTS in deciding to purchase Viatical Settlements from the FIDELITY Companies, and the Purchasers were harmed thereby.

91. The Circuit Court for Baltimore City found that Beneficial Companies had violated the Maryland Securities Act by offering and selling unregistered securities in or from Maryland by failing to register as a broker dealer, by employing unregistered broker dealer agents, and by making material misrepresentations and omissions in connection with the offer and sale of Viatical Investment contracts.

92. GUILFORD and THOMPSON, who caused the Beneficial Companies, on behalf of the Purchasers, to enter into the Trustee Agreements with others, breached those Agreements and caused the Beneficial Trustees to breach those Trustee Agreements. Specifically, the Officer Defendants caused the trusts to transfer Purchasers' funds in a manner contrary to the terms of the Trustee Agreements, including the transfer of funds directly to the Officer Defendants and shell companies they controlled. GUILFORD and THOMPSON also caused the Beneficial Trustees to pay, with new Purchasers' funds, premiums on the old Policies acquired by the Beneficial Companies for which there were insufficient escrowed funds. These Defendants thus permitted and caused the Beneficial Companies to operate as a Ponzi Scheme.

93. GUILFORD and THOMPSON also purposefully destroyed the independence of the Trusts by exercising control and signatory authority over the escrow accounts.

94. Defendants GUILFORD and THOMPSON were named as Defendants in an enforcement action brought by the Commissioner of Securities for the State of Colorado.

95. In 2000, the Beneficial Companies declared bankruptcy. Following the bankruptcy of the Beneficial Companies, and following the various Cease and Desist orders, Defendants GUILFORD and THOMPSON then started FIDELITY and associated with DULUDE, and engaged in the identical wrongful conduct that was the subject of legal action against GUILFORD and THOMPSON in the past.

96. Defendants GUILFORD and THOMPSON caused THE FIDELITY COMPANY DEFENDANTS and DULUDE to waste Purchaser funds by, among other things: (i) paying salaries for employees of other companies owned and operated by the Officer Defendants; (ii) causing the FIDELITY Companies to enter into contracts with other companies owned and operated by the Officer Defendants and to transfer large sums of Investor cash to those companies; (iii) making unauthorized payments to MILLS and others; (iv) causing the FIDELITY Companies to defend the regulatory actions brought by authorities in Maryland, Colorado, Washington, Arizona, Pennsylvania, Virginia, Kansas, Delaware, Iowa, Ohio, and California.

97. The Officer Defendants breached their duties to the FIDELITY Companies and to the Purchasers by failing to adopt policies to protect the FIDELITY Companies from the intentional and negligent misconduct alleged herein.

98. The Officer Defendants breached their duties to the FIDELITY Companies and to the Purchasers by concealing the negligent and intentional misconduct alleged herein from Purchasers, and by authorizing causing and permitting the FIDELITY AGENTS to make material misrepresentations about the FIDELITY Companies, and the Beneficial

Companies' Viatical Settlements when selling those Viatical Settlements to the Purchasers.

## G.    SPECIFIC WRONGFUL CONDUCT OF MILLS

99. The FIDELITY Companies appointed certain attorneys and accountants, MILLS, and DOES 151 to 200, to act as trustees and escrow agents for the funds the Purchasers sent to the Beneficial Companies for the purchase of Viatical Investments.

100. MILLS was a party to a Trustee Agreement which was executed by MILLS and by an officer of THE FIDELITY COMPANY DEFENDANTS and DULUDE.

101. In addition to the contractual duties prescribed by the Trust Agreements, MILLS and DOES 151 to 200 owed fiduciary obligations to the FIDELITY Companies and to each of the Purchasers.

102. Defendants MILLS, and DOES 151 to 200, breached their fiduciary and contractual obligations and were negligent in discharging their duties as Trustee as is described in more detail below.

103. Pursuant to the Trustee Agreements, MILLS and DOES 151 to 200 were responsible for, among other things: (i) receiving funds from the Purchasers; (ii) assisting in closing the Viatical Settlements; (iii) distributing the funds at settlement as prescribed by the Trustee Agreement; (iv) monitoring each Viator's status and medical history; (v) paying the premiums on the viaticated Policies as prescribed by the Trustee Agreement; (vi) acting as the designated owner of each of the viaticated Policies; (vii) obtaining the death certificate of the Viator; (viii) filing death claims with the appropriate life insurance company; (ix) distributing funds to the appropriate Purchasers after a Policy matured; and (x) accounting for the Purchasers' funds in the escrow accounts.

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

104. As noted earlier, Purchasers of the FIDELITY Companies' Viatical Settlements were instructed to and did send their funds to MILLS in Ohio. Pursuant to the terms of the Trustee Agreements, the Beneficial Trustees placed the funds received from these Purchasers into a "Viatical Trust Account."

105. Upon the closing of a Viatical Settlement - the acquisition of a Viator's Policy by the FIDELITY Companies on behalf of an Investor or Purchasers - MILLS, pursuant to the terms of the Trustee Agreement was authorized to transfer Purchasers' funds from the Viatical Trust Account to five recipients: (i) MILLS was authorized and commanded to transfer to the FIDELITY Viator the agreed amount to compensate the Viator for the sale of his or her Policy; (ii) MILLS was authorized and commanded to transfer to the FIDELITY BROKER the agreed amount to compensate the Broker for its services; (iii) MILLS was authorized and commanded to transfer to a "Premium Escrow Account," an amount sufficient to pay the premiums on the Policy for the duration of the Viator's life expectancy, as stated in the Purchaser's Purchase Authorization Agreement, plus one year; (iv) MILLS was authorized and commanded to pay itself a "Trustee's Fee" pursuant to a formula prescribed by the Trustee Agreement; and (v) MILLS was authorized and commanded to pay all remaining funds from the Purchasers in the event of early death of the insured to FIDELITY. Additionally, all interest from the Trust Accounts was paid to FIDELITY.

106. MILLS breached their contractual obligations under the Trustee Agreement by, among other things, transferring Purchasers' funds from the Viatical Settlement directly to the directors and officers of FIDELITY and to shell companies owned and controlled by the Officers and Directors of the FIDELITY Companies.

107. MILLS also breached their contractual obligations with respect to their Post-Settlement Ministerial Duties, prescribed by the Trustee Agreements. Because THE FIDELITY COMPANY DEFENDANTS and DULUDE and the FIDELITY PHYSICIANS had grossly and intentionally underestimated the life expectancies of the

-24-
CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

FIDELITY Viators, the funds transferred into the Premium Escrow Account by MILLS were insufficient to pay the premiums which would come due on the Policies during the actual lifetimes of the Viators.

108. Because the FIDELITY Viators almost uniformly lived much longer than their life expectancy plus one year, MILLS was instructed to notify the Purchasers of the remaining premiums and fees associated with the Policy and inform those Purchasers of their responsibility to satisfy such premiums and fees or risk losing the right to receive any and all benefits under the Policy.

109. MILLS also breached their contractual, fiduciary and other duties to the Purchasers by failing to maintain their independence from the Beneficial Companies and the Directors and Officers of the Beneficial Companies. Indeed, the Trustees' independence was an important part of the marketing of the Viatical Settlements by THE FIDELITY COMPANY DEFENDANTS and DULUDE and the FIDELITY AGENTS. THE FIDELITY COMPANY DEFENDANTS and DULUDE and the FIDELITY AGENTS told Purchasers, among other things, that: (i) MILLS was "Independent" and would provide "maximum assurance to all parties"; (ii) each Trustee was "insured through a Professional Liability Insurance Policy"; and (iii) the Escrow Accounts would pay the premiums on the viaticated Policies in which the Purchasers had invested during the full life expectancy of each Viator as reflected on each Purchase Authorization Agreement executed by each Investor and his or her FIDELITY Agent, and for one year beyond that stated life expectancy.

110. MILLS, and DOES 151 to 200, failed to maintain their independence from THE FIDELITY COMPANY DEFENDANTS and DULUDE and from the directors and officers of the FIDELITY  Companies.  MILLS, and DOES 151 to 200, were not independent due to thier ownership interests in, employment and agency positions with, obligations to, and payments from the FIDELITY Companies and their officers,

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

directors and employees. In addition, as a result of MILLS' wrongful conduct, as described herein, the Purchasers suffered damages.

## H. SPECIFIC WRONGFUL CONDUCT OF THE FIDELITY BROKERS

111. The FIDELITY BROKERS, and DOES 51 to 100: (i) identified Viators who were interested in selling their Policies; (ii) introduced those Viators and their Policies to the FIDELITY Companies; (iii) provided the putative Viators' medical records and other information to the FIDELITY Companies; and (iv) facilitated the FIDELITY Companies' review and acquisition of the putative Viators' Policies.

112. In cases in which the FIDELITY BROKER was successful in brokering the sale of a Policy to the Beneficial Companies, that FIDELITY BROKER would be paid a substantial commission based upon the value of the Policy sold. The shorter the life expectancy of the Viator, the greater the value of the Policy, and the larger the FIDELITY BROKER'S commission. The FIDELITY BROKERS thus had a financial incentive to induce the FIDELITY Companies to acquire the Policies they referred to the FIDELITY Companies, and to maximize the apparent value of those Policies.

113. The FIDELITY BROKERS specifically knew that: (i) the FIDELITY Companies would viaticate the Policies and resell them to Purchasers; (ii) the Viator's medical condition and life expectancy were critical to the value of that Viator's Policy; and (iii) the Purchasers would rely on the representations of the Viator's health and life expectancy in deciding whether to invest in these viaticated Policies.

114. The FIDELITY BROKERS also knew that THE FIDELITY COMPANY DEFENDANTS and DULUDE would be more likely to bid on and acquire a particular Policy if the life expectancy of the putative Viator was 48 months or less, and that the shorter the life expectancy of the putative Viator, the more money THE FIDELITY COMPANY DEFENDANTS and DULUDE would be likely to bid for that Policy and the larger the FIDELITY BROKERS' fees would be.

115. The FIDELITY BROKERS, and DOES 51 to 100 intentionally and/or negligently misrepresented the health, medical condition, and/or life expectancy of the Viators whose Policies they sold to the FIDELITY Companies.

116. The    FIDELITY BROKERS knew or should have known that the FIDELITY Physicians and certain of the Director and Officer Defendants falsified the life expectancies of the Viators in order to ensure that THE FIDELITY COMPANY DEFENDANTS and DULUDE could acquire Policies from the Viators through the FIDELITY BROKERS and sell them to the Purchasers.

117. The FIDELITY BROKERS knowingly marketed Policies to the FIDELITY Companies which had been rejected by other Viatical companies because the life expectancy of the viator was too long (i.e. 5-15 years) for the Policy to be viaticated. These FIDELITY BROKERS knew that THE FIDELITY COMPANY DEFENDANTS and DULUDE would obtain a life expectancy determination of four years or less and that based upon this life expectancy determination, FIDELITY would acquire these Policies.

118. In some cases, the FIDELITY BROKERS were able to purchase Policies in which the insured had a life expectancy of five years or more, known as "life settlements," at a discounted rate, and then sell those same Policies at a huge profit to FIDELITY as Viatical Investments, with a life expectancy of four years or less.

119. The Purchasers justifiably and reasonably relied on the material misrepresentations of the FIDELITY BROKERS in purchasing Viatical Settlements in Policies that had been purchased by the FIDELITY Companies.

///

///

///

## H.  SPECIFIC WRONGFUL CONDUCT OF FIDELITY AND ITS FIDELITY OFFICER DEFENDANTS

120. GUILFORD was a highly paid executive officer of the Beneficial Companies before their bankruptcy and was knowledgeable and sophisticated in Viatical Settlements and the Viatical industry. Mr. GUILFORD is a principal officer of FIDELITY.

121. BRAD C. THOMPSON was a highly paid executive officer of the Beneficial Companies before their bankruptcy and was knowledgeable and sophisticated in Viatical Settlements and the Viatical industry.  Mr. THOMPSON is a principal officer of FIDELITY.

122. RICHARD H. GUILFORD, BRAD C. THOMPSON, BRENDA TLUCZEK, WILLIAM J. CARMOUCHE, ESTUKO DULUDE and F. NEIL THOMPSON were also highly paid Board members and directors of THE FIDELITY COMPANY DEFENDANTS and were all was knowledgeable and sophisticated in Viatical Settlements and the Viatical industry.

123. Each of FIDELITY OFFICER DEFENDANTS, and DOES 151 to 200 by virtue of their sophistication in the Viatical industry and their role as a highly compensated executive officers of FIDELITY, as well as Beneficial before that, were in a position to ensure that the FIDELITY COMPANY DEFENDANTS and DULUDE adopted policies and procedures which would ensure that the Viatical Settlements sold by FIDELITY OFFICER DEFENDANTS were safe, low risk investments, and that Purchasers were made fully aware of all the risks prior to their acquisition of the FIDELITY Companies' Viatical Investments.

124. Each of the Officer Defendants owed common-law and statutory duties to the Purchasers. These duties obligated the Officer Defendants to act, and cause the the FIDELITY COMPANY DEFENDANTS and DULUDE to act, with due care, loyalty

-28-

and candor in the acquisition and administration of Policies and the sale of Viatical Settlements to the Purchasers.

125. These duties required the FIDELITY OFFICER DEFENDANTS to adopt policies and procedures designed to ensure that the FIDELITY COMPANY DEFENDANTS and DULUDE: (i) published and disseminated truthful marketing advising Purchasers of the true risks of investing in Viatical Investments; (ii) required the FIDELITY AGENTS to make truthful, accurate and complete statements when selling Viatical Settlements to Purchasers; (iii) fully investigated and otherwise conducted due diligence on the Policies purchased by the FIDELITY Companies on behalf of the Purchasers; (iv) required that MILLS remain independent of the officers and directors of the FIDELITY Companies; (v) required that MILLS fulfilled their contractual obligations to the FIDELITY COMPANY DEFENDANTS and DULUDE and the Purchasers; (vi) engaged FIDELITY PHYSICIANS who were independent, competent, qualified and proceeding in good faith; (vii) heeded the red flags in the Viatical industry and within the FIDELITY Companies' operations; (viii) protected the FIDELITY Companies and Purchasers from misappropriation and waste of the Purchasers' funds by the officers and employees of the FIDELITY COMPANY DEFENDANTS; and (ix) abided by the rules and regulations governing the sale of Viatical Settlements in the jurisdictions of California which the FIDELITY COMPANY DEFENDANTS and DULUDE did business.

126. The Officer Defendants negligently and/or intentionally failed to cause the FIDELITY COMPANY DEFENDANTS and DULUDE to adopt these policies and procedures, and, as a direct result of these omissions, caused the FIDELITY COMPANY DEFENDANTS and DULUDE to become insolvent, caused the diminution of the value of the Viatical Settlements acquired by the FIDELITY Companies and the Purchasers, and caused the Purchasers to suffer harm by losing the moneys they invested in the FIDELITY Companies' Viaticals.

127. The Officer Defendants: (i) failed to ensure that the FIDELITY AGENTS made accurate and complete representations to the Purchasers concerning the risks of investing in Viaticals; (ii) failed to publish truthful marketing materials; (iii) failed to investigate the Viaticals they sold to Purchasers; (iv) failed to require that the FIDELITY Companies engage truly independent Trustees who would fulfill their contractual obligations to the FIDELITY COMPANY DEFENDANTS and DULUDE and the Purchasers; (v) failed to require that THE FIDELITY COMPANY DEFENDANTS and DULUDE engaged truly independent and competent FIDELITY PHYSICIANS; (vi) failed to obtain truthful and accurate life expectancy determinations from the FIDELITY PHYSICIANS; (vii) failed to protect the waste and misappropriation of the Purchasers funds; and (viii) caused the FIDELITY COMPANY DEFENDANTS and DULUDE to operate in violation of the laws and regulations governing the sale of Viatical Investments in the various jurisdictions in which THE FIDELITY COMPANY DEFENDANTS and DULUDE did business.

128. The acts and omissions of the Officer Defendants caused the FIDELITY COMPANY DEFENDANTS, and certain of the FIDELITY AGENTS to be named as defendants in regulatory actions brought by the regulatory authorities in, Maryland, Delaware, Colorado, Washington, Kansas, Arizona, Pennsylvania, Virginia, Iowa, Ohio, and California.

129. The Purchasers were harmed and suffered damages as a result of the negligent and intentional wrongful acts of each of the FIDELITY OFFICER DEFENDANTS alleged herein.

130. Additionally, pursuant to Cal. Ins. Code §§1631, 10113.1 and 10113.2, it is unlawful and a misdemeanor to sell Interests in Viatical Settlements without obtaining a Viatical Settlement license from the State of California.

131. Additionally, Defendants, and each of them, engaged in the following specific wrongful conduct:

a. Mislabeling and misidentifying the investment product as a "Viatical" when they are "life settlements" as a matter of law (*See* Cal. Code Regs. Tit 10 §2548.2 – "Defining catastrophic or life threatening condition" as an injury or illness with a life span not exceeding 2 years, *See also* Cal. Code Regs. Tit 10 §2548.2, Cal. Code Regs. §25023 and Corp. Code § 25023);

b. Violating California law on Viatical investments, including Corp. Code §25102 by accepting investments with valuations of more than 10% investment of net worth of the investor;

c. Selling Viatical Settlements without a license as required by Cal. Code Ins. § 10113.2;

d. Fraudulently concealing the risk of Viatical Settlements;

e. Obtaining fraudulent "Doctor's" reports on the life expectancy of the Viators from persons who are not doctors;

f. Failed to disclose adverse tax consequences and Possible alternatives to Viatical settlements, as required Cal. Code Ins. § 10113.2;

g. Engaging in any false or misleading advertising, solicitation, or practice as prohibited by Cal. Code Ins. § 10113.2;

h. Selling of securities that are not qualified, nor exempt, under the Corp. Code §§25110, 25503, including violating the exemption requirements of Corp. Code §25102 by accepting investments with valuations of more than 10% investment of net worth of the investor and violation of State Law, or in selling Viatical Settlements to persons that have less than the required net worth requirements;

132. Plaintiffs are informed and believe that none of the FIDELITY OFFICER DEFENDANTS to this action possessed the required license to sell the interests in the Viatical Settlements to Plaintiffs herein. This failure was in violation of the law, and an illegal and wrongful act.

133. Plaintiffs are informed and believe that FIDELITY OFFICER DEFENDANTS never so informed Plaintiffs of such risk as required by law at any time.

## I. ALLEGATIONS OF CIVIL CONSPIRACY AMONG ALL DEFENDANTS

134. In order to establish such a claim, the Plaintiffs must show: (1) the formation and operation of a conspiracy; (2) wrongful conduct in furtherance of the conspiracy; and (3) damages arising from the wrongful conduct.

135. Plaintiffs allege based on information and belief that Defendants and each of them were engaged in a civil conspiracy in that defendants created and offered to sell these Viatical Settlements in a fraudulent and reckless manner.    Defendants, and each of them, are an integral part of the overall marketing and distribution scheme of the subject operations.

136. Each of the Defendants is a necessary part of the overall civil conspiracy in that each exercises control and direction over the operations of Defendants to create and sell these fraudulent Viatical settlements.

137. Additionally, pursuant to Cal. Ins. Code §§1631, 10113.1 and 10113.2, defendants and each of them engaged in a conspiracy to sell Interests in Viatical Settlements without obtaining a Viatical Settlement license from the State of California.

   a. Additionally, defendants mislabeled and misidentified the investment product as a "Viatical" when they are "life settlements" as a matter of law (see Cal. Code Regs. Tit 10 §2548.2 – "Defining catastrophic or life threatening condition" as an injury or illness with a life span not exceeding 2 years, *See also* Cal. Code Regs. Tit 10 §2548.2, Cal. Code Regs. §25023 and Corp. Code § 25023.) The "Viatical Settlement" sold to Plaintiff COIT involved a life span of four years, which does not meet the California Definition of Viatical Settlement, and is therefore, misleading as a matter of law.

   b. Additionally, Defendants and each of them were engaged in a conspiracy to violate California law on Viatical investments, including Corp. Code §25102 by

accepting investments with valuations of more than 10% investment of net worth of the investor.

c. Additionally, Defendants and each of them were engaged in a conspiracy to fraudulently concealing the risk of Viatical Settlements.

d. Additionally, Defendants and each of them were engaged in a conspiracy to obtaining fraudulent "Doctor's" reports on the life expectancy of the Viators, from persons who are not doctors.

e. Additionally, Defendants and each of them were engaged in a conspiracy to fail to disclose adverse tax consequences and possible alternatives to Viatical settlements, as required Cal. Code Ins. § 10113.2.

f. Additionally, Defendants and each of them were engaged in a conspiracy to Engaging in any false or misleading advertising, solicitation, or practice as prohibited by Cal. Code Ins. § 10113.2.

g. Selling of securities that are not qualified, nor exempt, under the Corp. Code §§25110, 25503, including violating the exemption requirements of Corp. Code §25102 by accepting investments with valuations of more than 10% investment of net worth of the investor and violation of State Law, or in selling Viatical Settlements to persons that have less than the required net worth requirements.

138. The acts and practices as plead in paragraphs 1 through 120 constitute wrongful conduct on the part of Defendants, and each of them, intended by the named Defendants within those causes of action to induce and lure persons into purchasing such Viatical settlements.

## J.    FACT PARTICULAR TO PLAINTIFF COIT

139. On March 20, 2002, plaintiff MARION COIT filled out a "Purchaser Suitability Questionnaire" that identified a specific net worth, absent home, home furnishings or automobiles in the amount of $400,000.

140. Pursuant to the marketing material of FIDELITY and the FIDELITY AGENTS, FIDELITY states that "Before Fidelity will allow you to purchase an interest in a Viatical settlement, we must be satisfied that you (a) are acquiring the interest for investment and not with a view to resell or distribute the interest in the life insurance policy, and (b) are a 'qualified purchaser' as that term is defined in section 25102(q) of the California Corporations Code."

141. Pursuant to Corp. Code §25110, "It is unlawful for any person to offer or sell in this state any security in an issuer transaction . . . unless such sale has been qualified under §25111, 25112 or 25113. . .or unless such security or transaction is exempted or not subject to qualification under Chapter 1. . ."

142. California Corporations Code §25102 exempts from the A natural person who, either individually or jointly with the person's spouse: (i) has a minimum net worth of one hundred fifty thousand dollars ($150,000) and had, during the immediately preceding tax year, gross income in excess of one hundred thousand dollars ($100,000) and reasonably expects gross income in excess of one hundred thousand dollars ($100,000) during the current tax year; or (ii) has a minimum net worth of two hundred fifty thousand dollars ($250,000). "Net worth" shall be determined exclusive of home, home furnishings, and automobiles. Other assets included in the computation of net worth may be valued at fair market value. Each natural person specified above, by reason of his or her business or financial experience, or the business or financial experience of his or her professional adviser, who is unaffiliated with and who is not compensated, directly or indirectly, by the issuer or any affiliate or selling agent of the issuer, can be reasonably assumed to have the capacity to protect his or her interests in connection with the transaction. The amount of the investment of each natural person shall not exceed 10 percent of the net worth, as determined by this subdivision, of that natural person."

143. Such requirements for lawful sales were also stated in the FIDELITY marketing materials.

144. On the fact of the "Purchaser Suitability Questionnaire," Defendants were prohibited from selling more than $40,000 worth of such Viatical securities to Plaintiffs and such sale in excess of this amount would be unlawful, wrong and fraudulent.

145. Plaintiff MARION E. COIT entered into a "Purchase Authorization Agreement" with FIDELITY on March 27, 2002 for a purchase of $100,000 interest in a Viatical settlement. Such interest was to pay $160,000 after 48 months. Plaintiff MARION E. COIT was to have a 40 percent interest in the $400,000 insurance policy. Such investment was illegal as a matter of law under §25102 as the investment was in excess of 10 percent of Plaintiff MARION E. COIT's assets. This policy was issued through Mutual of Omaha, Policy Number BU 1083432.

146. Plaintiff MARION E. COIT was provided a document signed by George Kindness this first Viatical Settlement indicating that the Viatical Settlement was based on a 78 year old unnamed patient with a life expectancy of 48 months. The average life expectancy of a 78 year old female is 10.3 additional years.

147. Plaintiff MARION E. COIT entered into a second "Purchase Authorization Agreement" with FIDELITY on April 30, 2002 for a purchase of an additional $66,000 interest in the same Viatical settlement. Plaintiff MARION E. COIT was to have an additional 26.40% interest in the $400,000 insurance policy, for a total interest of 66.40%. Such investment was illegal as a matter of law under §25102 as the investment was in excess of 10 percent of Plaintiff MARION E. COIT's assets, individually and when combined with the original purchase. This policy was issued through Mutual of Omaha, Policy Number BU 1083432.

148. Plaintiff MARION E. COIT was provided a document signed by George Kindness for this second Viatical Settlement indicating that the Viatical Settlement was based on

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

the same 78 year old unnamed patient with a life expectancy of 48 months. The average life expectancy of a 78 year old female is 10.3 additional years.

149. Plaintiff MARION E. COIT entered into a third "Purchase Authorization Agreement" with FIDELITY on June 18, 2002 for a purchase of $64,764.33 interest in a Viatical Settlement. Plaintiff MARION E. COIT was to have a 69.08% interest in the $150,000 insurance policy through Empire General Life Insurance, Co. (Policy Number 00120376.) Such investment was illegal as a matter of law under §25102 as the investment was in excess of 10 percent of Plaintiff MARION E. COIT's assets, individually and when combined with the other two purchases.

150. Plaintiff MARION E. COIT was provided a document signed by George Kindness for this third Viatical Settlement indicating that the Viatical Settlement was based on a 72 year old un-named patient with a life expectancy of 48 months. The average life expectancy of a 72 year old female is 14.1 additional years.

151. On August 24, 2007 Plaintiff MARION E. COIT first received notice from MILLS that the subject of the original two purchases for a total of 69.08% of the $400,000 insurance policy, was still living and the entire reserve fund (in an amount necessary to pay for one year over the expected life expectancy as indicated by George Kindness) was exhausted. MILLS asked for additional funds to cover the continuing expenses. At the cost of $5,000 per quarter for this policy ($20,000 per year), it would only take 7 years of additional life of the Viator (13 total) to reach a zero return on the investment. This is only slightly beyond the 10.3 average life expectancy of a 78 year old female. If the Viator lives longer, the principal of the Purchasers will be diminished for a net loss.

152. This was the first notice to Plaintiff of the wrongful nature of this investment. Until this date, Plaintiff had suffered not actual damage from the negligent, reckless and fraudulent activities of Defendants, and each of them. Upon being asked for in $10,000 additional funds, Plaintiff learned through investigation the wrongful nature of

Defendants and their misrepresentations, and the fact that such Viatical Settlement were based solely on the claims of George Kindness, who is not a doctor at all, and learned of the other wrongful acts as alleged in this complaint.

### K. CLASS ALLEGATIONS

153. Plaintiffs request certification of the following class number 1: All persons within the State of California who were sold Viatical Settlements by or through Defendants that were <u>not</u> exempt under Corp. Code §25102.

154. Plaintiffs request certification of the following class number 2: All persons within the State of California who were sold Viatical Settlements by or through Defendants that were properly exempt under Corp. Code §25102.

155. Plaintiffs request certification of the following subclass: All persons within the State of California either class number 1 or class number 2, who were over the age of 65 at the time of the sale.

156. Plaintiffs are informed and believe that the number of Plaintiffs within the class is so numerous that joinder is impracticable.

157. Common questions of law and fact arise from the allegations herein. Such common questions predominate over any individual questions affecting each member of the Class. The myriad questions of law and fact common to the class include :

    a. Whether FIDELITY and the other Defendants owed fiduciary and statutory duties and duties of care to the Purchasers;

    b. Whether FIDELITY and the other Defendants made misrepresentations to the Purchasers in a negligent manner;

c. Whether the FIDELITY and the other Defendants' misrepresentations were material;

d. Whether the Purchasers relied upon FIDELITY and the other Defendants' misrepresentations and whether such reliance was reasonable and justifiable;

e. Whether FIDELITY and the other Defendants violated the Insurance Code of California when selling Viatical Settlements to the Purchasers;

f. Whether FIDELITY and the other Defendants violated the Business and Professional Code §17200 by the wrongful conduct identified herein;

g. Whether FIDELITY and the other Defendants violated the Civ. Code §1750 by the wrongful conduct identified herein;

h. Whether FIDELITY and the other Defendants violated the Elder Financial Abuse Statutes, WIC §15610.30 by the wrongful conduct identified herein;

i. Whether FIDELITY and the other Defendants were unjustly enriched by the commissions they received as a result of selling Viatical Settlements to the Purchasers;

j. Whether FIDELITY and the other Defendants mislabeled and misrepresented the investment product as a "Viatical" when they are "Life Settlements" as a matter of law (*See also* Cal. Code Regs. Tit 10 §2548.2, Cal. Code Regs. §25023 and Corp. Code § 25023);

k. Whether FIDELITY and the other Defendants sold Viatical Settlements without a license that was required by Cal. Code Ins. § 10113.2;

l. Whether FIDELITY and the other Defendants fraudulently concealed the risk of Viatical Settlements;

m. Whether FIDELITY and the other Defendants obtained fraudulent "Doctor's" reports on the life expectancy of the Viators, from persons who are not doctors;

n. Whether FIDELITY and the other Defendants failed to disclose adverse tax consequences and Possible alternatives to Viatical settlements, as required Cal. Code Ins. § 10113.2;

o. Whether FIDELITY and the other Defendants engaged in any false or misleading advertising, solicitation, or practice as prohibited by Cal. Code Ins. § 10113.2, Corp. Code §25500 et seq. or 24500 *et seq.*;

p. Whether FIDELITY and the other Defendants, sold securities that are not qualified, nor exempt, under the Corp. Code §§25110, 25503, including violating the exemption requirements of Corp. Code §25102 by accepting investments with valuations of more than 10% investment of net worth of the investor.

158. These questions of law and fact are common to the members of the Class and predominate over questions affecting only individual Plaintiffs, which primarily is simply a matter of how much each Plaintiff invested.

159. Class action is superior to the other available methods for a fair and efficient adjudication of the controversy between Plaintiffs and Defendants because such action is uniquely suited to determining both the liability of and the damages caused by the diffusion of similarly situated Plaintiffs, while minimizing the amount of legal resources that must be utilized to resolve this controversy.

160. For the foregoing reasons, Plaintiffs requests certification of the aforementioned classs and subclass.

///

///

### FIRST CAUSE OF ACTION
### NEGLIGENCE
#### (Against each of the Defendants to this action)

161. Plaintiffs incorporate each of the preceding allegations as though fully set forth herein at length.

162. Each of the Defendants owed a duty to the Purchasers to whom to they sold Viatical Settlements to exercise reasonable care in advising them and aiding them in the selection of suitable investments.

163. The acts and/or omissions of the Defendants as described herein were in breach of their duty to exercise reasonable care in advising and aiding their Purchasers in the selection of suitable investments.

164. In particular, the Defendants failed to honor their duty to Purchasers to fully investigate the Viatical Investments they were selling, failing to understand the risks attendant to investment in Viatical Settlements and failing to advise and inform the Purchasers of these risks.

165. As a direct and proximate result of each of negligence of each of the FIDELITY AGENTS, the Purchasers suffer continuing and ongoing monetary damages.

166. WHEREFORE, Plaintiffs seeks relief as set forth below.

///

///

///

///

///

///

-40-

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

**SECOND CAUSE OF ACTION**
**NEGLIGENT MISREPRESENTATION**
**(Against each of the Defendants to this action)**

167. Plaintiffs incorporate each of the preceding allegations as though fully set forth herein at length.

168. Each of the Defendants owed a duty to the Purchasers with which it worked to exercise reasonable care in advising them and aiding them in the selection of suitable investments.

169. As set out herein, each of the Defendants negligently misrepresented to Purchasers the true facts concerning the FIDELITY Viatical Settlements and the safety of investments in Viatical settlements. Such misrepresentations include:

   a. Mislabeling and misrepresenting the investment product as a "Viatical" when they are "life settlements" as a matter of law (*See also* Cal. Code Regs. Tit 10 §2548.2, Cal. Code Regs. §25023 and Corp. Code § 25023);

   b. Misrepresenting and concealing the risk of Viatical Settlements;

   c. Misrepresenting the independence and reliability of the "Doctor's" reports on the life expectancy of the Viators, from persons who are not doctors nor qualified to make the life expectancy determinations as advertised;

   d. Failed to disclose adverse tax consequences and possible alternatives to Viatical settlements, as required Cal. Code Ins. § 10113.2;

   e. Engaging in any false or misleading advertising, solicitation, or practice as prohibited by Cal. Code Ins. § 10113.2;

   f. Selling of securities that are not qualified, nor exempt, under the Corp. Code §§25110, 25503, including violating the exemption requirements of Corp. Code §25102 by accepting investments with valuations of more than 10% investment of net worth of the investor and violation of State Law.

170. Defendants', and each of their, negligent misrepresentations were made with knowledge of the inherent danger in purchasing Viatical Investments, or with utter disregard and recklessness as to the truth or falsity pertaining to the safety of Viatical Settlements .

171. The Purchasers justifiably relied upon the misrepresentations of their respective FIDELITY AGENTS as described herein because the FIDELITY AGENTS were reasonably perceived to be experts in the area of investments in Viatical Settlements; or, at least Agent Defendants were perceived as highly knowledgeable about investments in Viatical settlements.

172. The acts of the FIDELITY AGENTS alleged herein were done as agents for the FIDELITY Companies. The directors and officers of the FIDELITY Companies knew or should have known of the negligent misrepresentations by the FIDELITY AGENTS, and owed a duty of care to the Purchasers, and negligently breached that duty by permitting the FIDELITY AGENTS to make the misrepresentations alleged herein to the Purchasers.

173. As a direct and proximate result of the Defendants' negligent misrepresentations, the Purchasers suffer continuing and ongoing monetary damages.

174. As a direct and proximate result of FIDELITY AGENTS' sale of Viatical Settlements without possessing the necessary license, the Purchasers suffer continuing and ongoing monetary damages.

175. WHEREFORE, Plaintiffs seek relief as set forth below.

///

///

///

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

### THIRD CAUSE OF ACTION
### FRAUD
### (Against all Defendants to this action except MILLS)

176. Plaintiffs incorporate each of the preceding allegations as though fully set forth herein at length.

177. This cause of action is against all FIDELITY COMPANY DEFENDANTS.

178. The actions or failures to act by Defendants, and each of them, as alleged herein are an unconscionable and despicable fraud upon these Plaintiffs.

179. Defendants, and each of them, intentionally failed to disclose to Plaintiffs facts known by Defendants, as more fully explained above, in order to fraudulently induce Plaintiffs to act in the manner herein alleged in reliance thereon, and with the intent to prevent Plaintiffs from further inquiry.

180. The statements made by Defendants, and each of them, were made with the intent to defraud and induce Plaintiffs into purchasing the Viatical interest from Defendants. These untruthful statements were made in bad faith in order to induce Plaintiffs to purchase the products offered by Defendants. Defendants intentionally concealed these facts from Plaintiff COIT with the intent to defraud her, and in doing so acted in bad faith. The following statements were made or omitted by Defendants, and each of them:

    a. Fraudulently mislabeling with the intent to deceive, the investment product as a "Viatical" when they are "life settlements" as a matter of law (*See also* Cal. Code Regs. Tit 10 §2548.2, Cal. Code Regs. §25023 and Corp. Code § 25023);

    b. Fraudulently selling Viatical Settlements without a license as required by Cal. Code Ins. § 10113.2.;

    c. Fraudulently concealing the risk of Viatical Settlements;

d. Obtaining fraudulent "Doctor's" reports on the life expectancy of the Viators from persons who are not doctors nor qualified to make the life expectancy determinations as advertised;

e. Fraudulently failing to disclose with the intent to deceive, and in violation of California law, the adverse tax consequences and possible alternatives to Viatical settlements, as required Cal. Code Ins. § 10113.2;

f. Fraudulently failing to disclose with the intent to deceive, that the subject Viatical Settlements were not qualified, nor exempt, under the Corp. Code §§25110, 25503;

181. Defendants, and each of them, are guilty of recklessness, oppression, fraud, and malice in the commission of the financial abuse of Plaintiffs described and alleged in this Complaint.

WHEREFORE, Plaintiffs seek relief as set forth below.

### FOURTH CAUSE OF ACTION
### Consumers Legal Remedies Act
### (Civ. Code, § 1750 et seq. [the CLRA])
### (Against all Defendants to this action)

182. Plaintiffs incorporate each of the preceding allegations as though fully set forth herein at length.

183. Defendants, and each of them, intentionally failed to disclose to Plaintiffs facts known by Defendants, as more fully explained above, in order to fraudulently induce Plaintiffs to act in the manner herein alleged in reliance thereon, and with the intent to prevent Plaintiffs from further inquiry.

184. The statements made by Defendants, and each of them, were made with the intent to defraud and induce Plaintiffs into purchasing the Viatical interest from Defendants. These untruthful statements were made in bad faith in order to induce Plaintiffs to

-44-

purchase the products offered by Defendants. Defendants intentionally concealed these facts from Plaintiff COIT with the intent to defraud her, and in doing so acted in bad faith.

185. As a result, Defendants have violated and continue to violate the Consumer Legal Remedies Act, *Civil Code* section 1770 et seq. ("CLRA") in at least the following respects:

   a. In violation of Section 1770(a)(5), the defendants' acts and practices constitute misrepresentations that the goods and services that they purport to provide had characteristics which it did not have; and

   b. In violation of Section 1770(a)(7), the defendants have misrepresented that the goods and services that they purport to provide are of a particular standard, quality and/or grade, when they are not.

186. Such misrepresentations as to the characteristics of the Viatical Settlements, include, but are not limited to:

   a. Mislabeling and misrepresenting the investment product as a "Viatical" when they are "life settlements" as a matter of law (*See also* Cal. Code Regs. Tit 10 §2548.2, Cal. Code Regs. §25023 and Corp. Code § 25023);

   b. Misrepresenting and concealing the risk of Viatical Settlements;

   c. Misrepresenting the independence and reliability of the "Doctor's" reports on the life expectancy of the Viators from persons who are not doctors nor qualified to make the life expectancy determinations as advertised;

   d. Failed to disclose adverse tax consequences and possible alternatives to Viatical settlements, as required Cal. Code Ins. § 10113.2;

   e. Engaging in any false or misleading advertising, solicitation, or practice as prohibited by Cal. Code Ins. § 10113.2;

   f. Selling of securities that are not qualified, nor exempt, under the Corp. Code §§25110, 25503, including violating the exemption requirements of Corp. Code §25102 by accepting investments with valuations of more than 10% investment

-45-
CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

of net worth of the investor and violation of State Law, or in selling Viatical Settlements to persons that have less than the required net worth requirements.

187. Pursuant to Section 1782, in conjunction with the filing of this complaint, Plaintiffs have notified Defendants in writing of the asserted violations of Section 1770 and demanded that Defendants rectify the conduct described above.

188. Defendants failed to take appropriate corrective or remedial action and failed to agree to take such action within 30 days after receipt of the notice.

189. Pursuant to Section 1782(2), Plaintiffs seek an order enjoining the above-described wrongful acts and practices of Defendants, plus costs and attorneys' fees, and any other relief which the Court deems proper.

190. Plaintiff COIT is a "senior citizen" as defined by Section 1761(f), and the subclass of persons over the age of 65, all meets the requirements of Section 1780(b) to each be entitled to an award of $5000 in addition to the other remedies available under the CLRA.

191. The Defendants' conduct as alleged in this cause of action was, and is, malicious, oppressive and/or fraudulent.

WHEREFORE, Plaintiffs seek relief as set forth below.

///

///

///

-46-

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

### FIFTH CAUSE OF ACTION
### Unfair Competition Law (Bus. & Prof. Code, § 17200 et seq.)
### (Against each of the defendants to this action)

192. Plaintiffs incorporate each of the preceding allegations as though fully set forth herein at length.

193. This cause of action is against all FIDELITY COMPANY DEFENDANTS and MILLS.

194. Business and Professions Code §17200, *et seq.*, the Unfair Competition Law, ("UCL"), defines unfair competition to include any unlawful, unfair, or fraudulent business act or practice. The UCL authorizes any person who was injured by such unlawful, unfair, or fraudulent business acts to bring an action for relief under the statute acting in the interests of the general public. The UCL also provides that a Court may enjoin acts of unfair competition, and order restitution to affected members of the public.

195. The business acts and practices of the Defendants as herein above described constitute unlawful business practices in violation of the UCL in that the Defendants have violated numerous provisions of California Law, as set forth above.

196. Pursuant to Cal. Ins. Code §§1631, 10113.1 and 10113.2, it is unlawful and a misdemeanor to sell Interests in Viatical Settlements without obtaining a Viatical Settlement license from the State of California. Such activity is wrongful under the UCL, and specifically, Defendants, and each of them, were unlicensed within the state of California for the sale of Viatical Settlements.

197. Additionally, Defendants and each of them, failed to disclose adverse tax consequences and possible alternatives to Viatical Settlements, as required Cal. Code Ins. § 10113.2.

198. Additionally, Defendants and each of them, engaged in false and misleading advertising, solicitation, or practice as prohibited by Cal. Code Ins. § 10113.2.

-47-

199. The business acts and practices of the Defendants as herein above alleged also constitute unfair business practices in violation of the UCL in that the acts and practices of Defendants challenged herein offend public policy and are substantially injurious to consumers. Said acts and practices have no utility that outweighs the substantial harm to consumers.

200. The business acts and practices of the Defendants as herein above alleged also constitute fraudulent business practices in that said acts and practices are likely to deceive members of the public as to their legal rights and obligations.

201. The unlawful, unfair, and fraudulent business acts and practices of the Defendants described herein will persist and/or recur unless and until an injunction is issued by this court.

202. As a direct and proximate result of the acts and practices described herein, the Defendants have received and collected substantial monies from affected members of the public that they are not entitled to. Such funds properly belong to the affected members of the public, including the members of the proposed class in this action, and constitute ill-gotten gains subject to an order of restitution and/or disgorgement.

203. Pursuant to Business and Professions Code §17203, Plaintiffs seek an injunction against Defendants enjoining them from engaging in the unlawful acts and practices alleged herein. Plaintiffs also seek an order requiring the Defendants to disgorge all ill-gotten gains and to provide appropriate restitution to all affected members of the public.

204. In addition, pursuant to Code of Civil Procedure §1021.5, and/or any other applicable provision of law, Plaintiffs seek attorneys' fees, costs, and expenses incurred in the filing and prosecution of this action.

205. WHEREFORE, Plaintiffs seek relief as set forth below.

-48-
CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

## SIXTH CAUSE OF ACTION
[Rescission of the Contract Pursuant To
Civil Code §§ 1667, 1668, 1751 and Unconscionablity]

206. Plaintiffs incorporate each of the preceding allegations as though fully set forth herein at length. This cause of action is against FIDELITY.

207. Pursuant to California Law, Civil Code § 1668 provides: "All contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law."

208. Defendants entered into a contract with Plaintiffs that specifically has a self-styled "indemnity" clause that is allegedly exempts defendants from the consequence of the own negligence, fraud and willful injury to Plaintiffs.

209.    Plaintiffs contend that the adhesion contracts signed by plaintiffs are in violation of Civil Code § 1667, as they are (1) contrary to an express provision of law; and/or (2) contrary to the policy of express law, though not expressly prohibited. As the contract is void.

210.    Plaintiffs contend that the adhesion contracts signed by plaintiffs are in violation of Civil Code § 1668, as they "have for their object, directly or indirectly, to exempt any one from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law." As the contract is void.

211. Pursuant to *America Online, Inc. v. Superior Court* (2001) 90 Cal.App.4th 1, the choice of law and venue provisions requiring forum in Virginia and Virginia substantive law contained within the contract are unenforceable as a matter of law pursuant to Civil Code §1751.

-49-
CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

212. Additionally, Plaintiffs also assert that the subject contracts were one of adhesion, in that it is a standardized contract prepared by Defendants that relegates to the subscribing party only the opportunity to adhere to the contract or reject it. Additionally, the contract and provision of this adhesion contract do not fall within the reasonable expectations of the adhering party.

213. Finally, the contract is unduly oppressive and unconscionable. In particular, the provisions concerning (1) choice of law as Virginia, which provides little or no protection for consumers; (2) venue being placed in an arbitration 3000 miles away in Virginia; (3) indemnity provisions that seeks to avoid liability for Defendants for actual misrepresentations, recklessness and fraud. Such provisions are contrary to California law, and as such, are unconscionable as a matter of law.

214. WHEREFORE, Plaintiffs seek relief as set forth below.

### SEVENTH CAUSE OF ACTION
### (Financial Elder Abuse Against All Defendants for the Subclass of
### Plaintiffs over the age of 65)

215. Plaintiffs incorporate each of the preceding allegations as though fully set forth herein at length.

216. During the acts complained herein, MARION E. COIT, and the subclass of persons over the age of 65, were elders as defined by WIC §15610.27.

217. Welfare and Institutions Code section 15610.30(a)(1) defines financial elder abuse. It occurs when a person or entity takes, secretes, appropriates or retains real personal property of an elder ... to a wrongful use or with the intent to defraud or both. Elder abuse also occurs when a person or entity assists in doing so. Welfare and Institutions Code section 15610.30(a)(2). A person or entity is deemed to have taken ... for a wrongful use if it is done in bad faith. Bad faith occurs if the person or entity knew or

should have known the elder had the right ... to have the property available to him or her. That person or entity should have known if it is obvious to a reasonable person that the elder had the right to the property.   Welfare and Institutions code section 15610.30(b)(1)-(2). The Plaintiff(s) must prove these facts by a preponderance of evidence.

218. While MARION E. COIT and other Plaintiffs, as subclass members, voluntarily entered into these Viatical Settlements, Defendants "took" Plaintiffs' property. "Take" means "to get into one's hands or in one's possession, power or control by force or stratagem."      (Webster's Third International Dictionary, Unabridged [1993].) "Stratagem" means "a cleverly contrived trick or scheme to gaining an end." (Merriam-Webster On-Line Dictionary [10th ed., 2005].)

219. Section 15610.30(a)(1) has been determined appropriate for stating a cause of action for financial elder abuse for wrongfully taking funds from an Elder by using deceptive practices to deplete accumulated funds of that Elder. (see *Negrete v. Fidelity and Guaranty Life Insurance Company* 444 F.Supp 2d 998 (2006).

220. Defendants fraudulently acquired millions of dollars by engaging in a scheme, specifically, using deceptive practices to take money from senior citizens by the following activities:

a.  Mislabeling and misrepresenting the investment product as a "Viatical" when they are "life settlements" as a matter of law (*See also* Cal. Code Regs. Tit 10 §2548.2, Cal. Code Regs. §25023 and Corp. Code § 25023);

b.  Selling Viatical Settlements without a license as required by Cal. Code Ins. § 10113.2.;

c.  Fraudulently concealing the risk of Viatical Settlements;

d.  Obtaining fraudulent "doctor's" reports on the life expectancy of the Viators from persons who are not doctors;

-51-

e. Failed to disclose adverse tax consequences and possible alternatives to Viatical settlements, as required Cal. Code Ins. § 10113.2;

f. Engaging in any false or misleading advertising, solicitation, or practice as prohibited by Cal. Code Ins. § 10113.2;

g. Selling of securities that are not qualified, nor exempt, under the Corp. Code §§25110, 25503, including violating the exemption requirements of Corp. Code §25102 by accepting investments with valuations of more than 10% investment of net worth of the investor and violation of State Law;

221. The taking and misappropriation by Defendants of the funds identified in this complaint of MARION E. COIT was done with the intent to defraud and with an unlawful pursuant to Welfare and Instit. Code §15610.30 (a)(1).

222. The actions or failures to act by Defendants, and each of them, as alleged herein are an unconscionable and despicable fraud upon these Plaintiffs.

223. Defendants, and each of them, intentionally failed to disclose to Plaintiffs facts known by Defendants, as more fully explained above, in order to fraudulently induce Plaintiffs to act in the manner herein alleged in reliance thereon, and with the intent to prevent Plaintiffs from further inquiry.

224. The statements made by Defendants, and each of them, were made with the intent to defraud and induce Plaintiffs into purchasing the Viatical interest from Defendants. These untruthful statements were made in bad faith in order to induce Plaintiffs to purchase the products offered by Defendants. Defendants intentionally concealed these facts from Plaintiffs with the intent to defraud her, and in doing so acted in bad faith.

225. The conduct of Defendants, and each of them, as described and alleged herein constitutes fiduciary abuse as defined in Welfare and Institutions Code §15610.30.

226. Defendants, and each of them, are guilty of recklessness, oppression, fraud, and malice in the commission of the financial abuse of Plaintiffs described and alleged in this Complaint.

227. Under Welfare and Institutions Code §15657(a), Defendants, and each of them, is liable for reasonable attorney fees and costs, including reasonable fees for the services of Plaintiffs herein, expended to litigation of this claim.

228. WHEREFORE, Plaintiffs seek relief as set forth below.

### EIGHTH CAUSE OF ACTION
(Negligence Per Se, Code Corp., §§ 25400 et seq.,
25500 et seq; Cal. Code Ins. § 10113.2)
(Against each of the Defendants to this action except)

229. Plaintiffs incorporate each of the preceding allegations as though fully set forth herein at length.

230. This cause of action is against all FIDELITY COMPANY DEFENDANTS under §25500, 25501.5, 25503, 25504, 25504.1, and MILLS pursuant to Code Corp., §25504.1, 25504.2 for any Viatical Settlements that were not properly exempt pursuant to Corp. Code § 25102.

231. Pursuant to Corp. Code §25004, the FIDELITY COMPANY DEFENDANTS, the FIDELITY OFFICERS, AGENTS and BROKERS all meet the definitional requirements of a "broker-dealer" subject to the requirements of the Code.

232. Pursuant to Corp. Code §25008, Plaintiffs are informed and believe that the Viatical Settlements were offered for sale within the state and such settlements were sold within the state.

233. Pursuant to Corp. Code §25010, Plaintiffs are informed and believe that Defendants, and each of them, are issuers of the subject unregistered security that are the Viatical Settlements.

234. Pursuant to Corp. Code §§ 25019 and 25023, the subject Viatical Settlements sold by Defendants constitute "Securities" as defined by the act in that they represent a profit sharing agreement, and specifically they are a "Viatical Settlements contract."

235. Additionally, due to violations of law, failure to be a licensed broker, and non compliance with exemption requirements, the subject Viatical Settlements sold to Plaintiffs were neither qualified as securities as required, nor exempt from registration under California Corporations Code §25102.

236. Pursuant to Code Corp § 25401, it is unlawful for any person to offer or sell a security in this state or buy or offer to buy a security in this state by means of any written or oral communication which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.

237. For the reasons stated in paragraphs 1-170, Plaintiffs contend that Defendants made misleading and untrue statements in violation of Code Corp § 25401, and omitted facts necessary to form a valid opinion concerning the Viatical Settlement investments.

238. Pursuant to Cal. Code Corp § 25501 "Any person who violates Section 25401 shall be liable to the person who purchases a security from him or sells a security to him, who may sue either for rescission or for damages (if the Plaintiff or the Defendant, as the case may be, no longer owns the security)." Plaintiffs contend Defendants, and each of them, were in violation of 25401 for the reasons stated, and liable under this section.

239. Pursuant to Cal. Code Corp §25110, "It is unlawful for any person to offer or sell in this state any security in an issuer transaction (other than in a transaction subject to Section 25120), whether or not by or through underwriters, unless such sale has been qualified under Section 25111, 25112 or 25113 or is otherwise exempt." Plaintiffs

contend each of the Defendants were in violation of Cal. Code Corp § 25110 by failing to qualify such Viatical Settlements for sale within the State of California.

240. Additionally, in violation of Cal. Code Ins. § 10113.2 and Corp. Code §25501.5 FIDELITY, FIDELITY OFFICER DEFENDANTS, FIDELITY AGENTS and FIDELITY BROKERS failed to register the FIDELITY Viatical Settlements as securities and failed to possess the appropriate license or registration required by state law of any individual or entity engaged in offering Viatical Settlements for sale. As such, Plaintiffs are entitled to restitution and damages under these sections.

241. Pursuant to Cal. Code Corp §25503. "Any person who violates Section 25110, 25130 or 25133, or a condition of qualification under Chapter 2 (commencing with Section 25110) of this part, imposed pursuant to Section 25141, or an order suspending trading issued pursuant to Section 25219, shall be liable to any person acquiring from him the security sold in violation of such section." Plaintiff contend that Defendants, and each of them, were in violation of Cal. Code Corp., §25110 for selling non-exempt securities in violation of such provisions.

242. The purpose of the state laws requiring licenses for the sale of Viatical Settlements is, at least in part, to protect the interests of the Purchasers.

243. The acts of the FIDELITY COMPANY DEFENDANTS , the FIDELITY OFFICER DEFENDANTS, FIDELITY AGENTS and FIDELITY BROKERS alleged herein, were done as agents for the FIDELITY. The directors and officers, brokers and agents of the FIDELITY Companies knew or should have known that the Viatical Settlements were not registered as securities and FIDELITY agents lacked the licenses and registrations necessary to sell Viatical Investments.

244. In failing to require the FIDELITY COMPANY DEFENDANTS' agents to possess the requisite licenses, the FIDELITY OFFICER DEFENDANTS breached their duty to the Purchasers.

245. Defendant MILLS aided and abetted in this wrongful conduct by being a necessary and integral part of this wrongful conduct as herein alleged and is liable pursuant to §25403 and 25504.1.

## PRAYER FOR RELIEF

WHEREAS, Plaintiff prays judgment against Defendants, and each of them:

1.  For a Court order requiring that Defendants immediately cease acts that constitute unlawful, unfair, or fraudulent business practices as alleged herein, and to enjoin Defendants from continuing to engage in any such acts or practices in the future;

2.  For general damages according to law and proof;

3.  For special damages according to law and proof, including damages based on Civil Code §3281, 3333, 3343;

4.  For costs of suit;

5.  For attorneys' fees;

6.  For treble damages pursuant to Civil Code §3345 for the subclass of elders;

7.  Damages pursuant to Corp. Code §§25501, 25501.5, 25503, 25504.1, 25504.2;

8.  Punitive damages;

9.  Treble damages under California Code of Civil Procedure section 1029.8;

10. Restitution;

11. Rescission of the Contracts

///

12.   For pre-judgment interest according to law;

13.   For such other and further relief as the Court may deem proper.

Dated:



By

    ROBERT S. ARNS (SB # 65071)
    MORGAN C. SMITH (SB# 168146)
    JONATHAN E. DAVIS
    (SB# 191346)
    **THE ARNS LAW FIRM**
    515 Folsom Street, 3rd Floor
    San Francisco, CA 94105
    Tel:   (415) 495-7800
    Fax:   (415) 495-7888


    KATHRYN A. STEBNER
    (SB #121088)
    **STEBNER AND ASSOCIATES**
    870 Market Street, Suite 1212
    San Francisco, CA 94102
    Tel:   (415) 362-9800
    Fax:   (415) 362-9801

    Attorneys for Plaintiffs

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

## AFFIDAVIT FOR VENUE

I, MARION E. COIT, do hereby declare under the laws of California and under the penalty of perjury, that I live in the county of Alameda in the City of Fremont, and that I entered into the contracts involved in this lawsuit within the County of Alameda.

DATED: *Mar. 27, 2008*

*Marion E. Coit*
MARION E. COIT

-57-
UNVERIFIED COMPLAINT FOR DAMAGES

1

## EXHIBIT TO COMPLAINTS

2

| EXHIBIT 1 | FIRST CONTRACT FOR VIATICAL INTEREST |
| EXHIBIT 2 | SECOND CONTRACT FOR VIATICAL INTEREST |
| EXHIBIT 3 | THIRD CONTRACT FOR VIATICAL INTEREST |
| | |

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

# EXHIBIT 1



1 ST Purchase

**Fidelity**
Assurance Associates
*A Limited Liability Company*

March 26, 2002

Ms. Marion E. Coit
711 Old Canyon Road, Spc. 115
Fremont, CA 94536

Dear Ms. Coit

All of us at Fidelity want you to know how much we appreciate your participation in our settlement program. Our staff has one purpose, to see that the terms of your contract are carried out correctly. We will be monitoring every stage of this transaction on your behalf to assure that all commitments and procedures are followed.

The documents required regarding your purchase are attached. We will be in touch with you to get the final forms necessary for completion. The final package of documents on your transaction are now being prepared and will be sent to you shortly . With this letter we are also enclosing the Insurance Company Rating along with the Medical Analysis of the viator. Both of these will also be in your permanent document package as well.

We sincerely appreciate your business and the trust you have placed in us.

Should you have any questions on these papers, we will be happy to answer them. Please call me toll free at 1-888-727-5002.

Sincerely,

F. Neal Thompson, CLU, CFP
Vice President-Insurance Operations

cc Tony Feuer

The Byrd Building - Suite Seven
1910 Byrd Avenue
Richmond, Virginia 23230

Phone: 804.282.8625
Facsimile: 804.282.8626

# FIDELITY ASSURANCE ASSOCIATES LLC
*A Delaware Limited Liability Company*
## INSURANCE DISCLOSURE MEMORANDUM
### FOR PROSPECTIVE PURCHASERS
### (CALIFORNIA RESIDENTS)

Fidelity Assurance Associates, LLC
1910 Byrd Avenue, Suite 7
Richmond, Virginia 23230

Phone: (804) 282-8625
          (888) 727-5002

Fax:    (804) 282-8626

Memorandum # ____ P 0176

Issued to  Marion E. Coit

Date: _____ March 26, 2002 _____

Viator # ____ T- 179 _____

Life Expectancy: ____ 48 months _____

Purchase Amount: ___ $ 100,000.00 _____
Representative : Tony Feuer

**Insurance**                                                    <u>Exhibit A</u>
**Disclosure**
<u>**Memorandum**</u>

### Fidelity Assurance Associates LLC

Name of Issuing Insurance   CompanyMutual of Omaha Group
 Best Rating  A (Excellent).Financial Size  $1.5 Billion to 2 Billion
 Address:  Mutual of Omaha Plaza, Omaha, NE 68175

Telephone Number:   402-342-7600  www.mutualofomaha.com

2.   Name of the State or Foreign Country Regulator of the Insurance Company:

Tim Wagner, Director  Nebraska Department of Insurance

Address:    Terminal Building, Suite 400, 941 'O' Street, Lincoln, NE 68508

Telephone Number 402-471-2201  Fax   402-471-4610

3.   Total Face Value of Insurance Policy: $400,000.00

Percentage of Insurance Policy the Purchaser will own:    40.00 %

4.   Insurance Policy Number:   BU 1083432

Issue Date:    Original 12/28/1999 converted on 12/28/2000

Type of Policy:    Universal Life Insurance

5.   If Group Insurance, please provide the following information:

Name:                    N/A

Address:

Telephone Number:

Material terms and conditions of converting Group Policy to an Individual Policy:

6.  If Term Insurance Policy, please provide the following information regarding
    Individual Responsible for Renewal:

    Name: _____ Not Applicable _____

    Address: _____

    Telephone number: _____

7.  Policy is beyond state statute for uncontestability:

    Yes __X__    .    No _____

    If so, reason for contestability: ____ Policy is beyond the 2 year contestable period. ____

    _____ Based on original issue date _____

    _____

8.  Insurance Policy Premium: __$5,440.00_____

    Terms of Premium Payments: _____ Quarterly _____

9.  Purchaser portion of the Insured's Premium, should the reserve be exhausted at the end of
    the guaranteed reserve period listed in Number 12 below    $ 2,176.00

10. Total Amount of all Purchaser funds that will be set aside to pay premiums for the next 5
    years ( 4 year Life Expectancy plus one additional year reserve )    $ 90,202.00

11  The following information is required for the Person who will be the Insurance Policy
    Owner and Responsible for Paying Premiums:

    Name: Mills,Potoczak & Company_____

    Address: 27600 Chagrin Blvd.,Suite 200, Cleveland,Ohio 44122_____

    Telephone Number: _216-464-7481_____ Fax: 216-464-7581_____

12  Date on which Purchaser may be required to pay premiums: June 28, 2007

T-179

# AmScot Medical Labs, Inc.
## Life Expectancy Certificate

DATE: 02-13-02                PATIENT:

SS#:                          D.O.B.: 09-09-23

AGE: 78                       SEX: FEMALE

**PRIMARY DIAGNOSIS:**
MODERATELY TO POORLY DIFFERENTIATED INFILTRATING CARCINOMA OF
LEFT BREAST WITH MIXED LOBULAR AND DUCTAL FEATURES, S/P
LUMPECTOMY (1997), S/P CHEMOTHERAPY, S/P RADIATION THERAPY,
T2N0M0 INTERMITTANT RECTAL INCONTINENCE

### REVIEW

SUBJECT IS A 78-YEAR-OLD FEMALE WITH HISTORY OF LEFT BREAST
CARCINOMA, S/P LUMPECTOMY (1997), S/P CHEMOTHERAPY AND
RADIATION. GIVEN THE AGE OF THE SUBJECT AND HER MEDICAL
PROBLEMS, LE ON INFORMATION AVAILABLE WOULD BE 48 MONTHS.

Signed  IRENA SHEYN, M.D., P.C.A.P. GEORGE KINDNESS, M.D., Ph.D.

*Please note: A life Expectancy cannot be precisely determined for any specific patient, but rather is the average life expectancy of a large group of patients with similar clinical and individual profiles. No one can guarantee or warrant the accuracy of any patient's precise life expectancy.*

*The information contained in this facsimile is privileged and confidential information for the use of the individual or entity named.*

This message is intended for the use of the individual or entity to which it is addressed and may contain information that is privileged and confidential, the disclosure of which is prohibited under applicable law. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone and return the original message to us at the above address via the U.S. Postal Service.

Fidelity Assurance Associates LLC                    VIATICAL SETTLEMENT

*1ˢᵗ Purchase*

## PURCHASE AUTHORIZATION AGREEMENT
### (California Residents)

THE FRACTIONALIZED INTERESTS IN VIATICAL SETTLEMENT
CONTRACTS OFFERED HEREBY HAVE NOT BEEN REGISTERED
UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE
"ACT"), OR CALIFORNIA SECURITIES LAWS, AND ARE BEING
OFFERED AND SOLD (I) IN RELIANCE ON THE POSITION THAT
SUCH INTERESTS ARE NOT SECURITIES UNDER THE ACT AND
(II) IN RELIANCE ON EXEMPTIONS FROM THE REGISTRATION
REQUIREMENTS OF THE CALIFORNIA LAWS PURSUANT TO
SECTION 25102(q) OF THE CALIFORNIA CORPORATIONS CODE.
THESE INTERESTS HAVE NOT BEEN APPROVED OR
DISAPPROVED BY THE SECURITIES AND EXCHANGE
COMMISSION OR ANY STATE SECURITIES COMMISSION OR
OTHER REGULATORY AUTHORITY, NOR HAVE ANY OF THE
FOREGOING AUTHORITIES PASSED UPON OR ENDORSED THE
MERITS OF THIS OFFERING OR THE ACCURACY OR ADEQUACY
OF THIS DISCLOSURE MEMORANDUM.

THIS MEMORANDUM CONSTITUTES AN OFFER ONLY TO
RESIDENTS OF THE STATE OF CALIFORNIA.

IF YOU ARE INTERESTED IN PARTICIPATING IN THIS VIATICAL
SETTLEMENT TRANSACTION, YOU ARE ASKED TO WAIT AT
LEAST FIVE (5) DAYS AND THEN EXECUTE AND RETURN THE
PURCHASE COMMITMENT ATTACHED HERETO AS EXHIBIT B.

UNDER CALIFORNIA LAW, YOU WILL HAVE THE RIGHT TO
CANCEL OR RESCIND YOUR PROSPECTIVE PURCHASE OF
VIATICAL SETTLEMENT INTERESTS WITHIN SEVEN (7) DAYS
AFTER REMITTING THE PURCHASE COMMITMENT. THERE IS
NO SPECIFIC FORM REQUIRED, BUT TO BE EFFECTIVE YOU
MUST SUBMIT YOUR NOTIFICATION TO FIDELITY IN WRITING.
WE ARE THEN OBLIGATED TO PROVIDE YOU WITH A REFUND
WITHIN SEVEN (7) DAYS OF RECEIPT OF YOUR NOTICE OF
CANCELLATION OR RESCISSION.   FOR SPECIFIC DETAILS
REGARDING RESCISSION, SEE THE "PURCHASER'S RIGHT OF
RESCISSION" PORTION OF THIS MEMORANDUM.

COPY

MAR 25 2002

681083.1 6/7/01                    7                    Please Initial Each Page _____

**WHEREAS,** fractionalized interests in viatical settlements are considered to be securities under California securities law, this Agreement is structured in order that the viatical settlement transactions arranged by Fidelity qualify for an exemption from the registration requirements of the California securities law.

**NOW THEREFORE WITNESSETH** that in consideration of the mutual covenants and promises contained herein, Purchaser and Fidelity agree as follows:

**I.    GENERAL AUTHORIZATION.**

**A.**    Fidelity shall represent Purchaser as agent for the purpose of identifying, qualifying, and purchasing life insurance policies and all related death benefits in the form of viatical settlements in accordance with the qualifications, purchasing criteria and instructions set forth below. Purchaser hereby approves and adopts these purchasing criteria and instructions as the criteria and instructions to guide Fidelity while acting as Purchaser's agent hereunder.

**B.**    It is agreed and understood that Purchaser's final authorization for the purchase of an interest in any specific viatical settlement is hereby withheld until after the receipt of a Purchase Commitment signed by the Purchaser in the form attached hereto as Exhibit B. Deposited funds shall be held in escrow until committed to a specific viatical settlement transaction. In accordance with Purchaser's right of rescission (described in Section III below), Purchaser has an absolute and unconditional right to cancel a Purchase Commitment and receive a refund of deposited amounts allocated to that transaction at any time up to seven (7) days after Fidelity's receipt of a Purchase Commitment.

**II.    PURCHASE CRITERIA AND INSTRUCTIONS.**

**A.**    This purchase authorization agreement is accompanied by a deposit in the amount of ___ONE HUNDRED THOUSAND___ ($ 100,000 ___), deposited in the _CITIZENS & COMMERCE BANK_ via check or money order payble in US dollars to Viatical Trust Account. # 4000C 94001. FIDELITY ESCROW

**B.**    Fidelity shall act as Purchaser's agent in the negotiation and making of any viatical settlement(s) which meet or exceed the following minimum criteria and instructions. As noted above, final authorization for a viatical settlement requires Purchaser's execution of a Purchase Commitment.

**CRITERIA**
**(Please check desired/appropriate box(es).)**

| Amount of Purchase | Projected Life Expectancy | Principal & Profits Return Amount |
|---|---|---|

By electing "first available," purchase funds will be placed on the first available policy. These policies can have a range of projected life expectancies between 12 months and 48 months.

☐    first available

| | | |
|---|---|---|
| $ 100,000 | 48 months or less (anticipated return 60%) | $ 160,000 |
| $_____ | 36 months or less (anticipated return 42%) | $_____ |
| $_____ | 24 months or less (anticipated return 28%) | $_____ |
| $_____ | 12 months or less (anticipated return 12%) | $_____ |

**COPY**    MAR 2 5 20...

INSTRUCTIONS. Before preparing a Purchase Commitment, Fidelity shall insure that:

The Insured's medical records have been reviewed and an estimated life expectancy established by an independent medical reviewing physician or team of physicians.

The Insured's attending physician has confirmed in writing that the Insured is of sound mind and under no constraint or other influence.

The policy has been issued by a highly-rated insurance company.

The policy is beyond the applicable contestability period and all suicide waiting clauses have been fulfilled.

Any and all loans against the policy, plus any interest accrued thereon, shall be paid no later than upon the closing of the viatical settlement.

### III.    PURCHASE PROCEDURES.

A.    Purchaser executes this Purchase Authorization Agreement and the Purchaser Suitability Questionnaire.

B.    Provided Purchaser meets suitability standards, Fidelity will seek to identify potential viatical settlement transactions which meet the Purchaser's criteria identified herein. If Purchaser does not meet the suitability standards, this Agreement shall be terminated and the deposited funds returned to Purchaser without interest.

C.    Upon identification of an appropriate viatical settlement, Fidelity shall send to Purchaser a Disclosure Memorandum (including specific information about the insured and the life insurance policy to be viaticated) and a Purchase Commitment. If the Purchaser desires to go forward with the viatical settlement, the Purchaser shall execute and return the Purchase Commitment to Fidelity. **The Purchase Commitment must be executed at least five (5) days after receipt of the Disclosure Memorandum.**

D.    Purchaser shall have an unconditional right to rescind or cancel the viatical settlement for up to seven (7) days after execution of the Purchase Commitment. There is no specific form required, but to be effective Purchaser's notification must be submitted to Fidelity in writing. Notice is effective when personally delivered, deposited in the U.S. mail, or deposited with a commercial courier or delivery service. Fidelity is obligated to provide Purchaser with a refund within seven (7) days of receipt of Purchaser's notice of cancellation or rescission.

E.    At the closing of the viatical settlement, Premium Escrow Services, Inc., with an address at 63 N. Main Street, Suite J, Stewartstown, PA 17563 (the "Trustee"), with administrative offices located at 10305 Buckwood Lane, Mechanicsville, Virginia, 23116, or its successor as designated by the Trustee Agreement, or a viatical settlement company licensed by a state of the United States shall be named as owner of the life insurance policies viaticated, in order to trace patient progress, monitor patient medical history, and upon maturity, file death claims. In the event a licensed viatical settlement company is named owner, the Trustee shall be designated irrevocable beneficiary.

F.    Within two weeks after the closing of each viatical settlement, Fidelity shall provide Purchaser with a closing binder providing Purchaser with all relevant details of the viatical settlement, including a copy of the document containing the absolute assignment and beneficiary change.

G.    Trustee will pay premiums for the viaticated life insurance policy out of administration cost withdrawal(s) and/or the Special Trust Account up to one year past stated life expectancy.

H.    Trustee as attorney-in-fact must be named beneficiary and Trustee will work directly with the insurance company on the Purchaser's behalf to file a certified death certificate, all administrative and collection

Initials: _____

· forms and remit a check directly to purchaser or his administrator (if qualified funds were used for the purchase).

## IV.   RELATIONSHIP OF THE PARTIES

A.    The relationship between Purchaser and Fidelity herein is that of principal and agent and neither Fidelity nor any of the Fidelity's representatives is in any way acting as an insurance agent, insurance broker, insurance representative, financial planner, legal advisor or tax advisor. No transaction entered into hereunder shall be interpreted as the purchase of life insurance by Purchaser.

· B.    The following appointments and authorization shall not be construed to limit Purchaser's authorization.

1.    Purchaser hereby appoints Fidelity to (a) enter into Funds Transfer Agreements and instructions to facilitate any viatical settlement entered into on behalf of Purchaser; (b) file, complete, and record any document(s) reflecting the irrevocable assignment of benefits with the insurance carrier of any policy and/or death benefit purchased hereunder; and (c) do any and all other actions on behalf of Purchaser which may be necessary to facilitate a viatical settlement.

2.    Fidelity is authorized to instruct Trustee to release purchase funds upon the closing of each viatical settlement.

3.    Fidelity is authorized to instruct Trustee to release administration costs, not to exceed 20% of purchase funds, from the purchase deposit at Fidelity's sole and exclusive discretion. Purchaser acknowledges that Fidelity does not make any representation as to what specific amount will be paid to the insured, nor as to the specific amount of fee(s) assessed by the Fidelity or by any supporting entity, including but not limited to, reviewing physicians, laboratories, attorneys and consultants, and/or legal and trust account costs.

4.    Fidelity is authorized to instruct Trustee to comply with any and all directives, requests, and/or instructions communicated to Trustee by Fidelity unless and until written instructions to the contrary, consistent with the terms hereof, are delivered by Purchaser to Trustee and Fidelity. Such written instructions shall be effective upon actual receipt of same by Trustee and Fidelity.

C.    In order to complete the transactions contemplated by this Agreement, Purchaser shall grant a limited power of attorney to Fidelity and Trustee for the purposes of executing such documents and taking such actions as Fidelity and/or Trustee deems necessary. Such grant of limited power of attorney is attached hereto as Exhibit A.

## V.    RISK FACTORS.

A.    Prospective Purchasers of viatical settlements should consider the following factors, together with all other written information provided by Fidelity, in determining whether to execute a Purchase Commitment for the purchase of a specific viatical settlement:

1.    Actual life span may exceed estimated life expectancy. The amount of the death benefit Purchaser will receive in a particular viatical settlement transaction is fixed, but the amount of time before the benefit is paid depends upon the actual lifespan of the viator. Thus, the expected or projected rate of return is based on an estimated life expectancy of the viator. Estimating life expectancy, even for the terminally ill, is an inherently subjective process. The actual lifespan of the viator may be affected by numerous factors, including medical unexpected changes in the viator's medical condition. Accordingly, the annual rate of return Purchaser receives may vary substantially from the expected or projected rate of return based upon the viator's actual lifespan. The actual lifespan of the viator may be less than, equal to or greatly exceed the estimated life expectancy of the viator upon which the purchase price of the policy was based. Purchaser's annual rate of return will be higher if the actual lifespan of the viator is less than the estimated life expectancy. Purchaser's annual rate of return will be lower if the actual lifespan of the viator is greater than the estimated life expectancy of the viator. In addition, if the actual lifespan of the

11       **COPY**      Initials: _____

viator is greater than the estimated life expectancy, Purchaser may be required pay premiums to keep the policy in force. (See Paragraph 4 below.)

2. The estimated life expectancy may be based upon a misdiagnosis. Although Fidelity believes that the independent physicians with whom Fidelity has contracted to review the medical records of the viator are well qualified, a risk exists that the physician will mis-diagnose the viator's condition. The physicians retained by Fidelity to estimate life expectancies are independent contractors and Fidelity is not responsible for any errors made by those physicians in determining estimated life expectancies.

3. New Medical Developments. Although the independent physicians with whom Fidelity has contracted may be correct in their diagnosis at the time such diagnosis is made, pharmaceutical developments or other medical developments may have the effect of prolonging the actual life span of the viator beyond the estimated life expectancy.

4. Possible obligation to pay premiums. Premiums on each viaticated policy will be prepaid for a least one year after the projected life expectancy of the viator. While the premium fund may contain excess funds from premiums that will be utilized for policies that may exceed their life expectancy, if the viator lives longer than the period for which premiums are prepaid, Purchaser may be required to pay the premiums in order to keep the policy in force. These payments would be payments required of Purchaser in excess of the Purchase Deposit or purchase amount of a specific policy that Purchaser has paid to receive Purchaser's viatical settlement interest. In this situation, Purchaser's failure to continue to pay premiums, or the failure of any other holder of a fractionalized interest in a policy in which Purchaser has a viatical settlement interest, could cause the policy to lapse, in which case Purchaser would not receive any death benefit and would lose his or her entire purchase price.

5. Lack of liquidity. There is no market for selling interests in viatical settlements. Accordingly, life settlements should be considered illiquid and funds used to purchase a viatical settlement interest will be unavailable to Purchaser until the viator dies.

6. Insolvency risk. There is a possibility that the insurance company issued the viaticated policy may become unable to meet its obligation to policyholders. Many states have established guaranty funds to pay the obligations of failed insurance companies. However, there is a risk that an insurance company will fail under circumstances in which no state guaranty fund is available to pay its obligations or that the state guaranty fund will not have sufficient assets to pay all of the obligations of the insurance company. In either event, Purchasers of viaticated policies from that insurance company may fail to receive all or part of the death benefit.

7. Fidelity Assurance Associates LLC does not provide tax advice. The purchase of a viatical settlement interest may have federal or state tax consequences for Purchaser. Each Purchaser is urged to contact his or her personal tax advisor for guidance concerning the possible tax implications of a purchase of an interest in a viatical settlement. Fidelity does not provide tax advice and no agent or representative of Fidelity is authorized to provide tax advice to Prospective Purchasers of viatical settlement interests. Purchasers are also urged to seek advice from a tax or financial advisor if they are using retirement funds or accounts to finance their purchase of a viatical settlement interest.

8. Fidelity has no control over independent third parties. Fidelity and the Trustee are unable to control the actions of third parties not affiliated with Fidelity or the Trustee. Under certain circumstances, insurance companies may refuse to pay death benefits on a viaticated life insurance policies even though the period of contestability has expired. Such a refusal (e.g. based on interpretations of contractual provisions contained in the policy) could cause substantial delays or reductions in the payment of the death benefit under the policy or may result in Purchaser's failure to receive all or any part of the death benefit. The payment due to a Purchaser could be delayed as a result or may result in Purchaser failing to receive all or any part of the death benefit.

9.    <u>Laws may be changed as enacted that affect the validity of viatical settlement contracts</u>. There can be no assurance that federal or state authorities will continue to allow viatical settlement contracts. Although no such action has been taken to date, the possibility exists that the United States and/or the several states or any of their regulatory agencies may take action to prevent or limit the viatical settlement business. While Fidelity believes the likelihood of such action is small, such action may have a material adverse effect on investments in viatical settlement contracts.

## VI.   PURCHASER'S REPRESENTATIONS & WARRANTIES.

A.    Purchaser represents and warrants:

1.    That Purchaser has full power and authority to enter into this Agreement, and if Purchaser is a corporation or other legal entity (a) such Purchaser is duly organized, validly existing and in good standing under the laws of the jurisdiction of its incorporation or organization, and has all requisite authority to carry on its business as now conducted, and (b) all action on the part of Purchaser necessary for the authorization, execution and delivery of this Agreement, and the performance of all obligations of the Purchaser hereunder has been taken and the Purchaser has all requisite power and authority to enter into this Agreement.

2.    That all data and information provided by Purchaser, including the address and relationship to any co-Purchaser, provided in connection with entering into this Agreement is true and correct.

3.    That the viatical settlement(s) to be purchased hereunder are being acquired by Purchaser solely for the personal ownership of Purchaser (or trust account, if Purchaser is a trustee) and not for resale, assignment, or distribution to others.

4.    That Purchaser will not execute a Purchase Commitment in connection with the viatication of any insurance policy in which Purchaser already possesses a direct or indirect beneficial interest.

5.    That Purchaser is sophisticated in financial matters and has either obtained professional advice or has access to professional advice. That Purchaser possesses or has access to such knowledge, education and experience in matters related to finance, tax, taxation, and business such that Purchaser is able to evaluate the considerations and risks involved in purchasing viatical settlements, and is able to make a diligent and informed decision with respect thereto. That Purchaser has relied upon Purchaser's own legal and tax counsel, to the extent that Purchaser deems necessary, as to all matters and questions concerning the transactions set forth herein and has not relied upon any opinion of Fidelity or the Trustee or their respective representatives, agents, counsel or accountants.

6.    That Purchaser has adequate means of providing for and sustaining Purchaser's current financial needs along with all possible and potential personal contingencies. That Purchaser has no need for liquidity of any purchase made pursuant to a Purchase Commitment hereunder and that Purchaser is able to bear the risk that the life span of the viator for one or more viatical settlements purchased hereunder may exceed the estimated life expectancy of such viator.

7.    That by reason of Purchaser's business and financial experience, or that of those retained by Purchaser to advise Purchaser about such and all other risk factors set forth in the "Risk Factors" section of this Agreement, Purchaser possesses the capacity to comprehend the purchase(s) authorized hereunder and to protect Purchaser with respect hereto.

8.    That the purchase funds deposited pursuant to this Agreement are neither borrowed nor in any way anticipated to be needed until the maturity of the policy purchased.

9.    That Fidelity has made available to Purchaser additional information contained in the documents delivered to Purchaser and has offered Purchaser the opportunity to ask questions of and receive answers from Fidelity in order to evaluate the merits and risk factors associated with the purchase of viatical settlements generally and as specified.

COPY

Initials: _____

**VII.    DISPUTE RESOLUTION.**

A.    In the event that any dispute arises between the parties hereto relating to the rights and obligations of the parties hereunder, the parties shall first attempt for thirty (30) days to negotiate and resolve such dispute.

B.    If the parties are not able to resolve a dispute within such thirty (30) day period as provided above, at any time thereafter, either party may request that the dispute be resolved and settled by binding arbitration held in Richmond, Virginia in accordance with the Commercial Arbitration Rules of the American Arbitration Association and judgment upon the award rendered by the arbitrator(s) may be entered into any court having jurisdiction thereof. The decision of the arbitrator(s) shall be final and conclusive.

**VIII.    MISCELLANEOUS.**

A.    **RIGHT OF RESCISSION.**

**SUBJECT TO THE TERMS HEREOF, PURCHASER SHALL HAVE THE UNQUALIFIED RIGHT TO RESCIND OR CANCEL THIS AGREEMENT, IN WHICH EVENT FIDELITY SHALL RETURN TO PURCHASER ALL FUNDS DEPOSITED PURSUANT TO THIS AGREEMENT LESS ANY PORTION OF THE PURCHASE DEPOSIT USED IN THE COMPLETION OF ANY VIATICAL SETTLEMENT AUTHORIZED PURSUANT TO A PURCHASE COMMITMENT AND FOR WHICH PURCHASER'S RIGHT OF RESCISSION HAS ALREADY EXPIRED.**

**TO RESCIND OR CANCEL THIS AGREEMENT, PURCHASER SHALL DELIVER WRITTEN NOTICE OF THE RESCISSION OR CANCELLATION TO FIDELITY, WHICH NOTICE SHALL BE EFFECTIVE UPON ACTUAL RECEIPT OF SAME BY FIDELITY. FIDELITY SHALL HAVE A REASONABLE TIME THEREAFTER TO MAKE AN ACCOUNTING AND RETURN ANY MONIES DUE TO PURCHASER.**

B.    **INDEMNITY AND HOLD HARMLESS.**

**PURCHASER FURTHER ACKNOWLEDGES THAT PURCHASER HAS READ THIS AGREEMENT AND CLEARLY UNDERSTANDS THE MEANING AND LEGAL CONSEQUENCES OF THE REPRESENTATIONS AND WARRANTIES MADE HEREIN AND THEREFORE DOES HEREBY, FOR HIMSELF/HERSELF, HIS/HER HEIRS, ASSIGNS, AND REPRESENTATIVES, INDEMNIFY AND HOLD HARMLESS FIDELITY AND FIDELITY'S REPRESENTATIVES, CONSULTANTS, EMPLOYEES, AND OTHERS ASSOCIATED WITH OR WORKING IN COOPERATION WITH FIDELITY PURSUANT TO THE AUTHORIZATION CONTAINED HEREIN AS SUPPLEMENTED BY A PURCHASE COMMITMENT, FROM ANY AND ALL DAMAGE AND/OR LIABILITY DUE TO OR ARISING OUT OF A BREACH OF ANY REPRESENTATIONS AND/OR WARRANTIES MADE HEREIN.**

C.    NOTICES. All notices required or permitted under this Agreement shall be in writing addressed to recipient as set forth herein or any change thereto noticed hereunder, and shall be deemed delivered upon receipt. Actual receipt shall be inferred when evidenced by Certificate of Mail. The addresses herein may be changed by notice consistent with this provision.

D.    HEADINGS. The headings inserted throughout this Agreement exist solely for convenience and shall not be construed as a part of this Agreement.

E.    GOVERNING LAW. This Agreement shall be interpreted, enforced, and governed by the laws of the Commonwealth of Virginia.

F.    BINDING EFFECT. This Agreement and the rights and obligations hereunder, shall inure to the benefit of and be binding upon the parties hereto as well as the successors-in-interest, heirs, assigns, executors and

68 7083.1 6/7/01

Initials: _____

administrators, and representatives of the parties hereto. Each party represents and warrants that it or its representative has the requisite authority to enter into this Agreement.

G.    **ENTIRE AGREEMENT.** This Agreement and the Purchase Commitment constitute the entire agreement between parties hereto with respect to the subject matter hereof, and may be amended only by a writing signed by both parties hereto.

**IN WITNESS WHEREOF** the undersigned have set their hand and seal the date first written above.

_____(SEAL)          _____(SEAL)
Purchaser                                Purchaser

                                         Fidelity Assurance Associates LLC

_____(SEAL)          _____(SEAL)
Representative



MAR 2 5 2002

Initials: _____

**Exhibit A**

### LIMITED POWER OF ATTORNEY NON-TAX QUALIFIED FUNDS

This Limited Power of Attorney shall convey by Purchaser NO OTHER AUTHORITY OTHER THAN AS STATED HEREINAFTER. This power of attorney may be terminated at any time by either party by Delivered Notice to that effect.

I, THE UNDERSIGNED PURCHASER, do hereby further constitute and appoint Fidelity Assurance Associates LLC, its officers, employees and agents as my true and lawful attorney for myself and in my place and stead, and my attorney-in-fact as aforesaid is empowered to act for me to file, complete and record any document reflecting the transfer of ownership and/or irrevocable assignment of benefits with the insurance carrier or the purchased policy(ies) and/or governmental agency requiring notification of said transfer and further to complete and file necessary documentation and administrative forms with the insurance company to effect the payment of the death benefit proceeds to me, the beneficiary.

I hereby ratify and affirm all that my attorney-in-fact has done, shall do, or may cause to be done in accordance with the foregoing.

_____ 3/20/02     _____
Purchaser           Date           Purchaser           Date

### LIMITED POWER OF ATTORNEY QUALIFIED FUNDS

This special power of attorney shall convey by Purchaser NO OTHER AUTHORITY OTHER THAN AS STATED HEREINAFTER. This power of attorney may be terminated at any time by either party by Delivered Notice to that effect.

I, THE UNDERSIGNED PURCHASER, do hereby further constitute and appoint Fidelity Assurance Associates LLC, its officers, employees and agents as my true and lawful attorney for myself and in my place and stead, and my attorney-in-fact as aforesaid is empowered to act for me to file, complete and record any document reflecting the transfer of ownership and/or assignment of benefits with the insurance company or the purchased policy(ies) and/or governmental agency requiring notification of said transfer and further to complete and file all necessary documentation and administrative forms with the insurance company to effect the payment of the death benefit proceeds to me the beneficiary; do and perform all actions which may be necessary to complete the loan transaction documents from FIDELITY ASSURANCE ASSOCIATES LLC secured by the proceeds of any such policy(ies); to ensure that the note payable to lender is paid from the insurance policy(ies) pledged as collateral only.

I hereby ratify and affirm all that my attorney-in-fact has done, shall do, or may cause to be done in accordance with the foregoing.

_____          _____
Date                             Purchaser

Qualified Retirement Plan Account # _____

COPY

641083.1 6/1/01                    16          MAR 2 5 2002      Initials: _____

## PURCHASE COMMITMENT

THE FRACTIONALIZED INTERESTS IN VIATICAL SETTLEMENT CONTRACTS OFFERED HEREBY HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "ACT"), OR CALIFORNIA SECURITIES LAWS, AND ARE BEING OFFERED AND SOLD (I) IN RELIANCE ON THE POSITION THAT SUCH INTERESTS ARE NOT SECURITIES UNDER THE ACT AND (II) IN RELIANCE ON EXEMPTIONS FROM THE REGISTRATION REQUIREMENTS OF CALIFORNIA LAWS PURSUANT TO SECTION 25102(q) OF THE CALIFORNIA CORPORATIONS CODE. THESE INTERESTS HAVE NOT BEEN APPROVED OR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE SECURITIES COMMISSION OR ANY OTHER REGULATORY AUTHORITY, NOR HAVE ANY OF THE FOREGOING AUTHORITIES PASSED UPON OR ENDORSED THE MERITS OF THIS OFFERING OR THE ACCURACY OR ADEQUACY OF THIS DISCLOSURE MEMORANDUM.

THIS MEMORANDUM CONSTITUTES AN OFFER ONLY TO RESIDENTS OF THE STATE OF CALIFORNIA.

IF YOU ARE INTERESTED IN PARTICIPATING IN THIS VIATICAL SETTLEMENT TRANSACTION, YOU ARE ASKED TO WAIT AT LEAST FIVE (5) DAYS AND THEN EXECUTE AND RETURN THE PURCHASE COMMITMENT ATTACHED HERETO AS EXHIBIT B.

UNDER CALIFORNIA LAW, YOU WILL HAVE THE RIGHT TO CANCEL OR RESCIND YOUR PROSPECTIVE PURCHASE OF VIATICAL SETTLEMENT INTERESTS WITHIN SEVEN (7) DAYS AFTER REMITTING THE PURCHASE COMMITMENT. THERE IS NO SPECIFIC FORM REQUIRED, BUT TO BE EFFECTIVE YOU MUST SUBMIT YOUR NOTIFICATION TO FIDELITY IN WRITING. WE ARE THEN OBLIGATED TO PROVIDE YOU WITH A REFUND WITHIN SEVEN (7) DAYS OF RECEIPT OF YOUR NOTICE OF CANCELLATION OR RESCISSION. FOR SPECIFIC DETAILS REGARDING RESCISSION, SEE THE "PURCHASER'S RIGHT OF RESCISSION" PORTION OF THIS MEMORANDUM.



## PURCHASE COMMITMENT

**THIS PURCHASE COMMITMENT** is made this __Z·7<sup>th</sup>day__ of __MAR__, 200**2**_by
__MARIEN E. COIT_____ (hereinafter "Purchaser") pursuant to the terms
and conditions contained in the **PURCHASE AUTHORIZATION AGREEMENT** by and between
Purchaser and Fidelity Assurance Associates LLC, 1910 Byrd Avenue, Suite 7, Richmond, Virginia 23230
("Fidelity").

I.    **RECEIPT OF DISCLOSURE MEMORANDUM.** Purchaser has received from Fidelity a
Disclosure Memorandum, which is incorporated by reference herein, containing detailed
information about a specific viatical settlement transaction meeting the criteria and requirements
supplied by Purchaser in the Purchase Authorization Agreement. Also contained in the Disclosure
Memorandum is a summary describing a viatical settlement transaction as well as a list of Risk
Factors that Purchaser is encouraged to consider before executing this Purchase Commitment.

II.   **PURCHASE COMMITMENT.** Purchaser hereby authorizes Fidelity to purchase the viatical
settlement interest specifically identified in the Disclosure Memorandum in accordance with terms
and conditions identified in the Purchase Authorization Agreement.

III.  **REPRESENTATIONS AND WARRANTIES OF PURCHASER.** Purchaser hereby represents
and warrants to Fidelity as follows:

1.    Purchaser has been furnished and has carefully read the Disclosure Memorandum and all
of its Exhibits. Purchaser has carefully reviewed and understands the risks of a purchase
of the viatical settlement interests.

2.    Purchaser is a "qualified purchaser" as such term is defined in the Disclosure
Memorandum.

3.    If Purchaser is a natural person, that the purchase funds committed hereunder do not
represent more than ten percent (10%) of the Purchaser's net worth. For purposes hereof,
"net worth" shall be determined exclusive of home, home furnishings, and automobiles.
Other assets included in the computation of net worth shall be valued at fair market value.

4.    Purchaser is executing this Purchase Commitment at least five (5) days after Purchaser's
receipt of the Disclosure Memorandum.

5.    The viatical settlement interests purchased hereunder are being acquired by Purchaser
solely for the personal ownership of Purchaser (or trust account, if Purchaser is a trustee),
solely for investment and not with a view to or for resale, or distribution or other
disposition. Purchaser has made no contract, agreement or arrangement and has no plans
to enter into any contract, agreement or arrangement for any resale, distribution or other
disposition of the viatical settlement interests.

6.    Purchaser does not possess a direct or indirect beneficial interest in any insurance policy
purchased hereunder.

7.    Purchaser is sophisticated in financial matters and has either obtained professional advice
or has access to professional advice. Purchaser possesses or has access to such
knowledge, education and experience in matters related to finance, tax, taxation, and
business such that Purchaser is able to evaluate the considerations and risks involved in
purchasing viatical settlements, and is able to make a diligent and informed decision with
respect thereto. Purchaser has relied upon Purchaser's own legal and tax counsel, to the
extent that Purchaser deems necessary, as to all matters and questions concerning the
transactions set forth herein and has not relied upon any opinion of Fidelity or the Trustee
or their respective representatives, agents, counsel or accountants.



681083.1 8/2/01                              49

IV.    **INDEMNIFICATION.** Purchaser acknowledges and understands the meaning and legal consequences of the representations and warranties contained in this Agreement and agrees to indemnify Fidelity and each other Purchaser of an interest in the viatical settlement transaction described in the Disclosure Memorandum, including any officer, director or control person of any such entity against, and hold all of them harmless from, any loss, damage, liability or costs (including attorneys' fees) due to or arising out of any breach of any representation or warranty of Purchaser contained in any document furnished by Purchaser in connection with the offering and sale of the viatical settlement interests, including this Agreement and the Purchase Authorization Agreement, or the failure by Purchaser to comply with any covenant or agreement made by Purchaser herein or in any other document furnished by Purchaser in connection with this transaction.

V.    **MISCELLANEOUS**

1.    **Notices.** All notices and other communications required or permitted under this Agreement shall be in writing, and, other than a rescission notice governed by statute under Section III, number 11 above, shall be deemed to have been delivered (a) on the date personally delivered, or on the date of transmission by confirmed telephonic facsimile, (b) on the date following the date of delivery to a nationally recognized overnight courier service, or (c) three days following the date of deposit in the United States mail, postage prepaid, by certified or registered mail, return receipt requested, in each case addressed to the parties at the addresses set forth in this Agreement or such other address as a party may specify to the other by notice delivered in accordance with this Section V.

2.    **Assignment.** This Agreement shall not be assigned or transferred by either party without the written consent of the other party.

3.    **Amendment and Waiver.** This Agreement shall be amended or modified only by an instrument signed by the parties hereto. A waiver of any provision of this Agreement must be in writing, designated as such, and signed by the party against whom enforcement of that waiver is sought. The waiver by a party of a breach of any provision of this Agreement shall not operated or be constructed as a waiver of any subsequent or other breach thereof.

4.    **Binding Effect.** Except as otherwise provided herein, this Agreement shall be binding upon, and inure to the benefit of, the parties and their heirs, executors, administrators, successors, legal representatives and assigns. If Purchaser is more than one person, the obligations of Purchaser shall be joint and several and the representations and warranties herein contained shall be deemed to be made by, and be binding upon each such person and such person's heirs, executors, administrators, legatees, devises, assigns, legal representatives and successors.

**IN WITNESS WHEREOF** the undersigned have set their hand and seal the date first written above.

_____          _____
Purchaser                                Co-Purchaser

Fidelity Assurance Associates LLC on _____ MAR. , 2-7th 200 2 .



# ESCROW SERVICE AGREEMENT

ESCROW SERVICE AGREEMENT ("Agreement') made and entered into this ___ th day of August, 2001 by and between Fidelity Assurance Associates LLC (a limited liability company) domiciled at 1910 Byrd Avenue, Suite 7, Richmond, Virginia, 23230 (hereinafter referred to as "Fidelity") and Mills, Potoczak & Company, an Ohio Professional Corporation located at 27600 Chagrin Boulevard, Suite 200, Cleveland, Ohio 44122 (hereinafter referred to as "Escrow Agent").

WHEREAS, Fidelity and Escrow Agent have entered into this Agreement for the purpose of assisting purchasers (Purchasers) purchase death benefits (or portions of such benefits) of life insurance policies (Life Settlements) from the Insured pursuant to a Purchase Agreement.

WHEREAS, Fidelity is a company principally engaged in identifying and assisting Purchasers in the purchase of a Life Settlement.

WHEREAS, Escrow Agent is a company principally operating as an independent public accounting firm which desires to serve as an escrow agent under the guidelines of this Agreement; and

WHEREAS, both parties agree that the sole relationship between themselves is one of an escrow arrangement pursuant to this Agreement,

NOW THEREFORE, in consideration of the consideration and mutual covenants herein contained, the parties agree as follows:

## I.    CRITERIA FOR FUND DEPOSIT:

A.    All funds to be used in the purchase of Life Settlements and related expenses thereon shall be forwarded by Fidelity (or by Purchasers) directly to Escrow Agent.

B.    All checks shall be made payable to "Fidelity Escrow Account." All wire transfers shall be addressed as follows:

> Citizens & Commerce Bank (the "Bank")
> Account #      4000099001
> ABA #:          051404901

C.    All funds must be accompanied by a Purchase Agreement properly executed by the Purchaser(s).

D.    All funds shall be deposited by Fidelity to the escrow account no later than one (1) business day following receipt, and proper notification made immediately to Escrow Agent of such deposit.

Escrow Service Agreement
Page 2

E.    All funds shall be invested by Escrow Agent in time deposits, Federal funds
re-purchase agreements or such similar instruments through the Bank or other cash
management service provider as it shall determine appropriate, provided that
deposits are properly insured by the FDIC.

F.    Fidelity shall provide each of its Purchasers (either directly or through its
selling agents) with a copy of this agreement. Fidelity shall make no other
representations to any Purchaser or insured regarding the functions of Escrow Agent
under this Agreement. Fidelity acknowledges that Escrow Agent neither evaluates
any medical information, nor tracks the life of the insured.

G.    All interest earned on the funds contained in the escrow account shall accrue
to the benefit of Fidelity, except to the extent of any unpaid fees owed to the Escrow
Agent. Fidelity, in turn, is responsible directly for the payment of all bank fees and
other expenses charged by the Bank and others in connection with maintaining the
escrow account. Escrow Agent fees shall be paid directly from the Escrow Account
described in Section I. B.

H.    Purchasers' funds will be returned by Escrow Agent if not allocated to a
policy within 90 days of receipt of such funds into the escrow account.

I.    Escrow Agent shall receive a fee for its services under this Agreement
according to a schedule mutually agreed to from time to time by Fidelity and
Escrow Agent. The current fee schedule is attached as Exhibit A.

## II.    FUNDS SHALL BE RELEASED BY ESCROW AGENT UPON COMPLETION OF THE FOLLOWING:

A.    Fidelity shall provide to Escrow Agent a copy (by mail or by fax) of the
written confirmation (hereinafter, the "Confirmation") from each insured's
insurance carrier indicating the proper recording of the policy assignment, transfer,
or other change of policy ownership naming a trust as owner with the Escrow Agent
named as trustee of said trust. This Confirmation shall include the beneficiary
designation change showing the trust as the beneficiary on behalf of the
Purchaser(s). Fidelity shall provide Escrow Agent with the name of the appropriate
person(s) at such insurance carrier to contact for independent verification by Escrow
Agent of proper recording. Fidelity shall represent to Escrow Agent that it is
accepting the Purchase Agreement as provided to the Escrow Agent. Fidelity shall
further represent that each of the policies purchased pursuant to a Life Settlement
shall meet all of the criteria set out in its marketing materials and in the Purchase
Agreement.

Escrow Service Agreement
Page 3

B.    Escrow Agent shall not accept any policy that has been assigned in any method other than by outright sale of absolute or collateral assignment (along with a valid debt instrument) or by transfer for value provisions. No gift assignments shall be considered as meeting the purchase criteria unless the assignment is made to an irrevocable life insurance trust.

C.    Escrow Agent shall read the Verification of Coverage completed by the insurance company to determine if the policy meets certain purchase criteria. Escrow Agent shall only be responsible for review of the following criteria: incontestability (as further defined below), lapse of suicide clause, whether policy is assignable, whether policy is convertible (as to group policies), whether the policy is portable (as to group policies), and current status of premium payments (or validity of premium waiver provisions). As to the incontestability of any policy, the Escrow Agent shall only verify that the policy is more than two years old, or that, in the case of a group policy, that the incontestability provisions have been waived. The Escrow Agent shall not be responsible for the proper licensing of Fidelity and/or its brokers and other agents, for determining the rating of the insurance company, determining whether the premium reserve is adequate to cover the life expectancy of the insured, determining whether the life expectancy is "consistent" with that included in the Purchase Agreement, reviewing or otherwise evaluating the independent physician's report, or evaluating whether or not the inception date of the policy pre-dated the first diagnosis of any terminal illness.

D.    Escrow Agent shall be obligated only for the performance of the duties and responsibilities specifically set out herein and shall be released from all liability in relying on any representations made by Fidelity in its performance of such duties and responsibilities.

## III.    FUNDS WILL BE DISBURSED IN THE FOLLOWING MANNER:

A.    Payment to the insured or designee (sometimes referred to as the "Closing") shall be paid either by check, certified check, or wire to his/her account within twenty-four (24) hours following receipt by Escrow Agent of the Confirmation from Fidelity. Escrow Agent will not disburse any payments against any "uncollected funds". Uncollected funds for purposes of this Agreement shall include cashier's checks deposited less than one (1) banking day before disbursement and personal checks deposited less than 5 (five) banking days before disbursement.

B.    The destination and related payment instructions will be provided by Fidelity.

Escrow Service Agreement
Page 4

C.    Payment shall be made to Fidelity of an amount designated by Fidelity (not to exceed 20% of the funds received from the Purchaser(s)) after the Escrow Agent has read the Verification of Coverage and has determined that it meets the criteria cited in Section II C above, provided that the Purchase Agreement between Fidelity and the Purchaser(s) provides for such payment to made. If the Purchase Agreement does not so provide, then payment to Fidelity shall be made coincident with the Closing Section III. A.  This payment shall be made via ACH or wire transfer directly into an account of Fidelity's designation or by check. Fidelity shall be solely responsible for paying its agents, brokers and assigns, if any. Fidelity shall also be solely and directly responsible for any refunds owed to Purchasers pursuant to its Purchase Agreements therewith, including but not limited to, any "shortfalls" in the escrow account caused by the aforementioned payment of fees to Fidelity or any of its brokers, agents, or assigns.

D.    Payment shall be made to Escrow Agent coincident with the Escrow Agent's payment to the insured (i.e., at Closing).  Payment shall be made via ACH or wire transfer directly into an account of Escrow Agent's designation or by corporate check.  Reimbursement for any out-of-pocket expenses (other than those paid directly by Fidelity pursuant to Section I. G.) shall be made on or near the 10th and 25th of each month. Such out-of-pocket expenses will generally consist of fax and photocopying charges, shipping and postage, long distance, If an escrow has been opened by Fidelity but not completed, Escrow Agent shall be paid a fee as shown in Exhibit A.

## IV. PREMIUMS SHALL BE PAID BY THE ESCROW AGENT IN THE FOLLOWING MANNER:

A.    For each policy upon which cash premiums must be paid, Fidelity shall inform the Escrow Agent of the amount to be paid into the Mills, Potoczak & Company Fidelity Premium Trust Account ("Premium Trust Account"). Fidelity shall be responsible for the calculation of this amount in accordance with the Purchase Agreement. This shall be referred to as the Premium Reserve. The Premium Trust Account will be maintained at the Bank, but with a separate account number from that used for the purchase of policies.

B.    Fidelity acknowledges that the Escrow Agent has no responsibility whatsoever for policies that do not require cash premiums. Escrow Agent is responsible for periodically contacting the insurance company to verify that coverage is in force, contacting employers to verify continued employment of insured and to verify continuation of group policy coverage, and to verify continued disability premium waivers. Escrow Agent shall provide a report to Fidelity upon request that summarizes the contacts made. Escrow Agent shall be compensated on a time and material basis for these services, as provided in Exhibit A.

Escrow Service Agreement
Page 5

C.    Escrow Agent shall pay the premiums of each policy on the most frequent payment cycle allowed by the insurance company through either check or ACH (when available), unless otherwise instructed by Fidelity. Escrow Agent shall maintain all records to show the prompt payment of all premiums due. Escrow Agent shall continue to pay premiums until informed in writing of the insured's death.

D.    Escrow Agent shall invest the funds in the Premium Trust Account according to Section I. E. of this Agreement. These investment earnings will accrue to the benefit of Fidelity.

E.    If the insured dies and the sum of the premium payments is less than the Premium Reserve, then the excess shall be paid to Fidelity.

F.    If the Premium Reserve for a policy is exhausted, the Escrow Agent shall first contact Fidelity and inform it that it will have to provide funds for policy continuation, including the cost of the premiums and services by the Escrow Agent, or otherwise the policy will lapse. If Fidelity does not respond within 10 business days, or responds that it does not desire to pay the premiums, then Escrow Agent shall contact the Purchaser(s) and inform them that they will have to provide funds for policy continuation, including the cost of the premiums and services by the Escrow Agent, or otherwise the policy will lapse.

G.    Fidelity acknowledges that the liability for premium payments rests solely with the Purchaser(s) and that the Escrow Agent has no financial or other responsibility whatsoever for this liability.

H.    Escrow Agent shall be paid for the time and materials incurred to pay the premiums, record the liabilities, answer inquiries regarding the premiums and reconciling the Premium Trust Account by Fidelity for the period during which the premiums have been prepaid and by the Purchaser(s) thereafter. These payments shall be made directly from the Premium Trust Account. These fees are further described in the attached Exhibit A.

I.    No disbursements other than those listed in this Section IV shall be allowed from the Premium Trust Account.

Escrow Service Agreement
Page 6

## V. OTHER PROVISIONS

A.     Either Escrow Agent or Fidelity may terminate this Agreement at any time by giving thirty (30) days written notice and Fidelity or Purchasers shall then have the right to appoint a substitute escrow agent to accept delivery of the escrow account and the funds then contained therein to such substitute escrow agent. No delivery of funds will be made until evidence is presented that each depositor of funds into the Escrow Account has been notified of the substitution. The form of this notice shall be mutually agreed upon by Fidelity, the Escrow Agent and the substitute escrow agent.

B.     Fidelity shall have no power over the Escrow Account or the ability to pledge the account, borrow against it or encumber it in any way.

C.     Upon notification by Fidelity of the demise of the insured, Escrow Agent will file on behalf of the Purchasers a claim for death benefits with instructions to pay the benefits directly.

D.     Escrow Agent will maintain professional liability insurance and fidelity bond coverage in the amounts of $10,000,000 and $1,500,000; respectively.

E.     Mills, Potoczak & Company shall not be liable for any taxes on the earnings in either the escrow or premium trust account.

F.     Escrow Agent will invoice the Purchaser for services performed by Escrow Agent if Fidelity cannot fulfill their responsibilities, is unwilling to.

G.     Escrow Agent, in its sole discretion, may discontinue providing the services outlined in this Agreement if any fees remain unpaid for more than 30 days after the invoice date.

IN WITNESS WHEREOF, each of the below parties has read and understands this agreement.

FIDELITY ASSURANCE ASSOCIATES LLC

Chairman

MILLS, POTOCZAK & COMPANY

President

# EXHIBIT 2

# Fidelity

Assurance Associates LLC

*2ⁿᵈ Purchase*

April 30, 2002

Ms. Marion E. Coit
711 Old Canyon Rd. # 115
Fremont, CA 94536

Dear Ms. Coit

All of us at Fidelity want you to know how much we appreciate your continued
participation in our settlement programs. Our staff has one purpose, to see that the terms
of your contract are carried out correctly. We will be monitoring every stage of this
transaction on your behalf to assure that all commitments and procedures are followed.

The documents required regarding your additional purchase are attached. The final
package of documents on your transaction are now being prepared and will be sent to you
shortly . With this letter we are also enclosing the Insurance Company Rating along with
the Medical Analysis of the viator. Both of these will also be in your permanent
document package.

We sincerely appreciate your business and the trust you have placed in us.

Should you have any questions on these papers, we will be happy to answer them. Please
call me toll free at 1-888-727-5002.

Sincerely,

F. Neal Thompson, CLU, CFP
Vice President-Insurance Operations

cc  Tony Feuer

The Byrd Building · Suite Seven · 1910 Byrd Avenue · Richmond, Virginia 23230

# FIDELITY ASSURANCE ASSOCIATES LLC
### *A Delaware Limited Liability Company*
## INSURANCE DISCLOSURE MEMORANDUM
### FOR PROSPECTIVE PURCHASERS
### (CALIFORNIA RESIDENTS)

Fidelity Assurance Associates, LLC
1910 Byrd Avenue, Suite 7
Richmond, Virginia 23230

Phone: (804) 282-8625
      (888) 727-5002

Fax:   (804) 282-8626

Memorandum # _____ P 0183

Issued to  Marion E. Coit

Date: _____ April 30, 2002 _____

Viator # _____ T- 179 _____

Life Expectancy: _____ 48 months _____

Purchase Amount: _____ $ 66,000.00 _____
Representative : Tony Feuer

**Insurance
Disclosure
Memorandum**

### Fidelity Assurance Associates LLC

Name of Issuing Insurance   CompanyMutual of Omaha Group
 Best Rating  A (Excellent).Financial Size  $1.5 Billion to 2 Billion
 Address:  Mutual of Omaha Plaza, Omaha, NE 68175

 ˣTelephone Number:   402-342-7600  www.mutualofomaha.com

2.    Name of the State or Foreign Country Regulator of the Insurance Company:

Tim Wagner, Director  Nebraska Department of Insurance

Address:    Terminal Building, Suite 400, 941 'O' Street, Lincoln, NE 68508

Telephone Number 402-471-2201 Fax  402-471-4610

3.    Total Face Value of Insurance Policy: $400,000.00

5.44

Percentage of Insurance Policy the Purchaser will own:    26.40 %

4.    Insurance Policy Number:   BU 1083432

Issue Date:    Original 12/28/1999 converted on 12/28/2000

Type of Policy:    Universal Life Insurance

5.    If Group Insurance, please provide the following information:

Name:                                N/A

Address:

Telephone Number:

Material terms and conditions of converting Group Policy to an Individual Policy:

T- 179

# AmScot Medical Labs, Inc.
## Life Expectancy Certificate

**DATE: 02-13-02**                    **PATIENT:**

**SS #:**                              **D.O.B.: 09-09-23**

**AGE: 78**                            **SEX: FEMALE**

**PRIMARY DIAGNOSIS:**
**MODERATELY TO POORLY DIFFERENTIATED INFILTRATING CARCINOMA OF LEFT BREAST WITH MIXED LOBULAR AND DUCTAL FEATURES, S/P LUMPECTOMY (1997), S/P CHEMOTHERAPY, S/P RADIATION THERAPY, T2N0M0 INTERMITTANT RECTAL INCONTINENCE**

### REVIEW

SUBJECT IS A 78-YEAR-OLD FEMALE WITH HISTORY OF LEFT BREAST CARCINOMA, S/P LUMPECTOMY (1997), S/P CHEMOTHERAPY AND RADIATION. GIVEN THE AGE OF THE SUBJECT AND HER MEDICAL PROBLEMS, LE ON INFORMATION AVAILABLE WOULD BE 48 MONTHS.

Signed  IRENA SHEYN, M.D., F.C.A.P. GEORGE KINDNESS, M.D., Ph.D.

*Please note  A life Expectancy cannot be precisely determined for any specific patient, but rather is the average life expectancy of a large group of patients with similar clinical and individual profiles. No one can guarantee or warrant the accuracy of any patient's precise life expectancy.*

*The information contained in this facsimile is privileged and confidential information for the use of the individual or entity named.*

This message is intended for the use of the individual or entity to which it is addressed and may contain information that is privileged and confidential, the disclosure of which is prohibited under applicable law. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone and return the original message to us at the above address via the U.S. Postal Service.

# EXHIBIT 3

# Fidelity

Assurance Associates LLC

*3rd Purchase (IRA)*

June 18 2002

Ms. Marion E. Coit
711 Old Canyon Road # 115
Fremont, CA 94536

Dear Ms. Coit

All of us at Fidelity want you to know how much we appreciate your participation in our settlement program. Our staff has one purpose, to see that the terms of your contract are carried out correctly. We will be monitoring every stage of this transaction on your behalf to assure that all commitments and procedures are followed.

The documents required regarding your purchase are attached. We will be in touch with you to get the final forms necessary for completion. The final package of documents on your transaction are now being prepared and will be sent to you shortly . With this letter we are also enclosing the Insurance Company Rating along with the Medical Analysis of the viator. Both of these will also be in your permanent document package as well.

We sincerely appreciate your business and the trust you have placed in us.

Should you have any questions on these papers, we will be happy to answer them. Please call me toll free at 1-888-727-5002.

Sincerely,

F. Neal Thompson, CLU, CFP
Vice President-Insurance Operations

cc: Tony Feuer

# FIDELITY ASSURANCE ASSOCIATES
*A Delaware Limited Liability Company*
## INSURANCE DISCLOSURE MEMORANDUM
### FOR PROSPECTIVE PURCHASERS
(California Residents)

Fidelity Assurance Associates, LLC
1910 Byrd Avenue, Suite 7
Richmond, Virginia 23230

Phone: (804) 282-8625
      (888) 727-5002

Fax:   (804) 282-8626

Memorandum #    P-185

Issued to  **Marion Colt**

Date:     June 18, 2002

Viator #    T- 221

Life Expectancy:   48 months

Purchase Amount:   $ 64,764.33

Representative: Tony Feuer

**Insurance**
**Disclosure**
**Memorandum**

### Fidelity Assurance Associates LLC

Name of Issuing Insurance Company:Empire General Life Insurance Co.(Best rating A+)

Address: 2801 Highway 280 South, Birmingham, AL 35223

Telephone Number:  205-879-9230  www.protective.com

2.    Name of the State or Foreign Country Regulator of the Insurance Company:  _____

David Parsons, Commissioner, Alabama Department of Insurance

Address:  ___ 201 Monroe Street, Suite 1700, Montgomery, Alabama 36104

Telephone Number 334-269-3550 Fax: 334-241-4192

3.    Total Face Value of Insurance Policy:  $150,000.00

Percentage of Insurance Policy the Purchaser will own:  __69.08 %__

4.    Insurance Policy Number:  __00120376__

Issue Date:  _____May 7, 1999__

Type of Policy:  ____Level Term (15 year)__

5.    If Group Insurance, please provide the following information:

Name: _____N/A_____

Address: _____

Telephone Number: _____

Material terms and conditions of converting Group Policy to an Individual Policy:

_____

_____

6.   If Term Insurance Policy, please provide the following information regarding
     Individual Responsible for Renewal:

     Name: _____ Not Applicable _____

     Address: _____

     Telephone number: _____

7.   Policy is beyond state statute for uncontestability:

           Yes  X          No _____

     If so, reason for contestability:  ____ Policy is beyond the 2 year contestable period. ____

     _____

     _____

8.   Insurance Policy Premium:  $3,490.00 _____

     Terms of Premium Payments:  ____ Annually _____

     Portion of Premium Payment purchaser may be obligated to pay at maturity $ 2,410.89
     (Date shown in item # 12 should the policy exceed expectancy)

9.   Amount of Purchaser funds that will be set aside to pay premiums:  $ 13,960.00 _____

10.  The following information is required for the Person who will be the Insurance Policy
     Owner and Responsible for Paying Premiums:

     Name:  Mills,Potoczak and Company_____

     Address:  27600 Chagrin Blvd.,Suite 200, Cleveland,Ohio 44122_____

     Telephone Number:  216-464-7481        Fax: 216-464-7581 _____

11.  Date on which Purchaser may be required to pay premiums:  June 18, 2006

-3-

# AmScot Medical Labs, Inc.
## Life Expectancy Certificate

DATE: 05-21-02

PATIENT: 150,000 F.V.

SS#:

D.O.B.: 11-06-29

AGE: 72

SEX: FEMALE

**PRIMARY DIAGNOSIS:**
CORONARY ARTERY DISEASE, VENTRICULAR HYPERTROPHY,
DEGENERATIVE JOINT DISEASE, OBESITY, AND LOBULAR CARCINOMA IN
SITU OF LEFT BREAST

## REVIEW

SUBJECT IS A 72 YEAR OLD FEMALE WITH MULTIPLE MEDICAL PROBLEMS
INCLUDING CORONARY ARTERY DISEASE WITH ASSOCIATED VENTRICULAR
HYPERTROPHY, HYPERLIPIDEMIA S/P CABG (3 VESSEL). RECORD INDICATES
ANGINA AND HYPERTENSION. THERE IS A HISTORY OF RENAL LITHIASIS
AND ASYMPTOMATIC CHOLENTHIASIS. INFLAMMATORY MECHANISMS
ACCENTUATED BY DEGENERATIVE JOINT DISEASE. RECENTLY DIAGNOSED
(4/02) WITH LOBULAR CARCINOMA OF THE LEFT BREAST, WHICH HAS A
LOW PROLIFERATIVE RATE, TREATED WITH TAMOXIFEN. GIVEN THE
LITANY OF DIAGNOSES, THE AGE OF THE SUBJECT, AND APPROPRIATE
MEDICAL MANAGEMENT, HER LE WOULD BE 48 MONTHS.

Signed GEORGE KINDNESS, M.D., Ph.D., MARVIN PENWELL, D.O.

*Please note: A life Expectancy cannot be precisely determined for any specific patient, but rather is the average life expectancy of a
large group of patients with similar clinical and individual profiles. No one can guarantee or warrant the accuracy of any patient's
precise life expectancy.*

*The information contained in this facsimile is privileged and confidential information for the use of the individual or entity named.*

This message is intended for the use of the individual or entity to which it is addressed and may contain information that is
privileged and confidential, the disclosure of which is prohibited under applicable law. If the reader of this message is not the
intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly
prohibited. If you have received this communication in error, please notify us immediately by telephone and return the original
message to us at the above address via the U.S. Postal Service.

LOCKE LORD BISSELL LIDDELL LLP
Michael Hession (SB# 219103)
1170 Peachtree Street, Suite 1900
Atlanta, Georgia 30309
Tel: (404) 870-4600
Fax: (404) 872-5547

Attorneys for Fidelity Assurance Associates, LLC.

### IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA
### IN AND FOR THE COUNTY OF ALAMEDA

| | | |
|---|---|---|
| MARION E. COIT on her behalf and on behalf of others similarly situated | ) ) ) | No. RG08379968 |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | |
| FIDELITY ASSURANCE ASSOCIATES LLC; FIDELITY OF GEORGETOWN, INC.; FINANCIAL SERVICES CONSULTANTS, INC.; MILLS, POTOCZAK & COMPANY; DULUDE & CARMOUCHE, INC.; RICHARD H. GUILFORD; BRAD C. THOMPSON; BRENDA TLUCZEK; WILLIAM J. CARMOUCHE; ESTUKO DULUDE; F. NEIL THOMPSON; ANTHONY FEUER and DOES 1 to 500, inclusive | ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## NOTICE OF FILING NOTICE OF REMOVAL

TO:  CLERK, SUPERIOR COURT OF THE STATE OF CALIFORNIA, IN
      AND FOR THE COUNTY OF ALAMEDA, AND PLAINTIFFS'
      ATTORNEY OF RECORD


EXHIBIT
B

PLEASE TAKE NOTICE, that on this date Defendant Fidelity Assurance Associates, LLC have duly forwarded and filed a Notice of Removal in the United States District Court for the Northern District of California in the above-referenced case, removing the case from the Superior Court of Alameda County to the United States District Court for the Northern District of California. A copy of the Notice of Removal is attached hereto as Exhibit A (without Exhibits).

Accordingly, no further proceedings should be had in this matter in the Superior Court of the State of California. By virtue of law, the aforesaid case is now removed, and further proceedings in this Court should be stayed.

Respectfully submitted, this ⟋⟍ day of May, 2008.


LOCKE LORD BISSELL & LIDDELL LLP

By: _____

Michael Hession (SB# 219103)
1170 Peachtree Street, Suite 1900
Atlanta, Georgia 30309
Tel: (404) 870-4600
Fax: (404) 872-5547

Attorneys for Fidelity Assurance Associates, LLC

2

LOCKE LORD BISSELL LIDDELL LLP
Michael Hession (SB# 219103)
1170 Peachtree Street, Suite 1900
Atlanta, Georgia 30309
Tel: (404) 870-4600
Fax: (404) 872-5547

Attorneys for Fidelity Assurance Associates, LLC.

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA
IN AND FOR THE COUNTY OF ALAMEDA

| | | |
|---|---|---|
| MARION E. COIT on her behalf and on behalf of others similarly situated | ) ) ) | No. RG08379968 |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | |
| FIDELITY ASSURANCE ASSOCIATES LLC; FIDELITY OF GEORGETOWN, INC.; FINANCIAL SERVICES CONSULTANTS, INC.; MILLS, POTOCZAK & COMPANY; DULUDE & CARMOUCHE, INC.; RICHARD H. GUILFORD; BRAD C. THOMPSON; BRENDA TLUCZEK; WILLIAM J. CARMOUCHE; ESTUKO DULUDE; F. NEIL THOMPSON; ANTHONY FEUER and DOES 1 to 500, inclusive | ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the within and foregoing
*NOTICE OF FILING NOTICE OF REMOVAL* by depositing a copy of same

3





in the United States Mail, in an envelope with adequate postage affixed thereto, addressed to counsel of record as follows:

Robert S. Arnes
Morgan C. Smith
Jonathan E. Davis
The Arns Law Firm
515 Folsom Street, 3rd Floor
San Francisco, CA 94105

Kathryn a. Stebner
Stebner and Associates
870 Market Street, Suite 1212
San Francisco, CA 94102

This __X__ day of May, 2008.

Michael Hession

4

3:08-CV-2585-JCS

JS 44 (Rev. 12/07) (cand rev 1-16-08)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON PAGE TWO OF THE FORM.)

## I. PLAINTIFFS
MARION COIT on her behalf and on behalf of others similarly situated

(b) County of Residence of First Listed Plaintiff (EXCEPT IN U.S. PLAINTIFF CASES)
Alameda

(c) Attorney's (Firm Name, Address, and Telephone Number)
Robert Arns
515 Folsom Street, 3d Fl.
San Francisco, CA 94105

## DEFENDANTS
Fidelity Assurance Assocs., LLC; Fidelity of Georgetown, Inc.; Financial Servs. Consultants, Inc.; [...] Propezal [...] Co.; Dulude & Carmouche, Inc.; Richard H. Golfer; Brad C. Thompson

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

Attorneys (If Known)
Locke Lord Bissell & Liddell
1170 Peachtree St., Suite 1900
Atlanta, GA 30309

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- [ ] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [ ] 3 Federal Question (U.S. Government Not a Party)
- [X] 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [X] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [X] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| [ ] 110 Insurance | PERSONAL INJURY | [ ] 610 Agriculture | [ ] 422 Appeal 28 USC 158 | [ ] 400 State Reapportionment |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 620 Other Food & Drug | [ ] 423 Withdrawal 28 USC 157 | [ ] 410 Antitrust |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 625 Drug Related Seizure of Property 21 USC 881 |  | [ ] 430 Banks and Banking |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | [ ] 630 Liquor Laws | PROPERTY RIGHTS | [ ] 450 Commerce |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | [ ] 640 R.R. & Truck | [ ] 820 Copyrights | [ ] 460 Deportation |
| [ ] 151 Medicare Act | [ ] 340 Marine | [ ] 650 Airline Regs. | [ ] 830 Patent | [X] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 152 Recovery of Defaulted Student Loans (Excl. Veterans) | [ ] 345 Marine Product Liability | [ ] 660 Occupational Safety/Health | [ ] 840 Trademark | [ ] 480 Consumer Credit |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 690 Other | LABOR | [ ] 490 Cable/Sat TV |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 710 Fair Labor Standards Act | SOCIAL SECURITY | [ ] 810 Selective Service |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury |  | [ ] 861 HIA (1395ff) | [ ] 850 Securities/Commodities/Exchange |
| [ ] 195 Contract Product Liability | PERSONAL INJURY | [ ] 720 Labor/Mgmt. Relations | [ ] 862 Black Lung (923) | [ ] 875 Customer Challenge 12 USC 3410 |
| [ ] 196 Franchise | [ ] 362 Personal Injury — Med. Malpractice | [ ] 730 Labor/Mgmt. Reporting & Disclosure Act | [ ] 863 DIWC/DIWW (405(g)) | [X] 890 Other Statutory Actions |
| REAL PROPERTY | [ ] 365 Personal Injury — Product Liability | [ ] 740 Railway Labor Act | [ ] 864 SSID Title XVI | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [ ] 368 Asbestos Personal Injury Product Liability | [ ] 790 Other Labor Litigation | [ ] 865 RSI (405(g)) | [ ] 892 Economic Stabilization Act |
| [ ] 220 Foreclosure | PERSONAL PROPERTY | [ ] 791 Empl. Ret. Inc. Security Act | FEDERAL TAX SUITS | [ ] 893 Environmental Matters |
| [ ] 230 Rent Lease & Ejectment | [ ] 370 Other Fraud |  | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 894 Energy Allocation Act |
| [ ] 240 Torts to Land | [ ] 371 Truth in Lending | PRISONER PETITIONS | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 895 Freedom of Information Act |
| [ ] 245 Tort Product Liability | [ ] 380 Other Personal Property Damage | [ ] 510 Motions to Vacate Sentence |  | [ ] 900 Appeal of Fee Determination Under Equal Access to Justice |
| [ ] 290 All Other Real Property | [ ] 385 Property Damage Product Liability | Habeas Corpus: |  | [ ] 950 Constitutionality of State Statutes |
| CIVIL RIGHTS | | [ ] 530 General | IMMIGRATION | |
| [ ] 441 Voting | | [ ] 535 Death Penalty | [ ] 462 Naturalization Application | |
| [ ] 442 Employment | | [ ] 540 Mandamus & Other | [ ] 463 Habeas Corpus — Alien Detainee | |
| [ ] 443 Housing/ Accommodations | | [ ] 550 Civil Rights | [ ] 465 Other Immigration Actions | |
| [ ] 444 Welfare | | [ ] 555 Prison Condition | | |
| [ ] 445 Amer. w/Disabilities—Employment | | | | |
| [ ] 446 Amer. w/Disabilities—Other | | | | |
| [ ] 440 Other Civil Rights | | | | |

## V. ORIGIN (Place an "X" in One Box Only)
- [ ] 1 Original Proceeding
- [X] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from another district (specify)
- [ ] 6 Multidistrict Litigation
- [ ] 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. 1441; 28 U.S.C. 1332(d)
Brief description of cause:
Class action for Damages and Injunctive Relief

## VII. REQUESTED IN COMPLAINT:
[X] CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: [ ] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY
PLEASE REFER TO CIVIL L.R. 3-12 CONCERNING REQUIREMENT TO FILE "NOTICE OF RELATED CASE".

## IX. DIVISIONAL ASSIGNMENT (CIVIL L.R. 3-2)
(PLACE AND "X" IN ONE BOX ONLY)
[X] SAN FRANCISCO/OAKLAND    [ ] SAN JOSE

DATE 5-21
SIGNATURE OF ATTORNEY OF RECORD

ORIGINAL FILE BY FAX

Court Name: U.S. District Court, NDCA
Division: 4
Receipt Number: 44611002209
Cashier ID: lenahac
Transaction Date: 05/22/2008
Payer Name: Interceptor
--------------------------------------
CIVIL FILING FEE
 For: Fidelity Assurance Associates
 Case/Party: D-CAN-3-08-CV-002585-001
 Amount:        $350.00
--------------------------------------
CHECK
 Check/Money Order Num: 13327
 Amt Tendered: $350.00
--------------------------------------
Total Due:     $350.00
Total Tendered: $350.00
Change Amt:     $0.00

JCS


Checks and drafts are accepted
subject to collections and full
credit will only be given when the
check or draft has been accepted by
the financial institution on which
it was drawn.